The STATE of Ohio, Appellee,

v.

MARINE, Appellant.

[Cite as *State v. Marine* (2001), 141 Ohio App.3d 127.]

Court of Appeals of Ohio,
Third District, Union County.

No. 14–2000–30.

Decided Feb. 14, 2001.

*Alison Boggs,* Union County Prosecuting Attorney, for appellee.

*Terry K. Sherman,* for appellant.

---

THOMAS F. BRYANT, Judge.

This appeal is taken by defendant-appellant, Robert D. Marine, Jr., from the judgment entered by the Court of Common Pleas of Union County finding Marine guilty of two counts of kidnapping a violation of R.C. 2905.01(A)(5),

abduction a violation of R.C. 2905.02(A)(2), and one count of carrying a concealed weapon a violation of R.C. 2923.12(A).

On February 1, 2000, shortly before 6:00 p.m. officers at the Richwood Police Department, in Richwood, Ohio, received a 911 call from a child located at 229 S. Franklin in Richwood, Ohio, claiming that his mother, Kathy Johnson, was the victim of domestic abuse. The officers proceeded to Johnson's home and found two children standing in the driveway. The officers exited the vehicle. One officer, Richard Crabtree, proceeded to enter the residence through the back door with the children and the other officer, Jason Pendleton headed towards the backyard, where there appeared to be a male exiting the residence and heading towards the vehicles parked in the driveway. It was later discovered that the male exiting the residence was appellant, Robert D. Marine, Jr.

Upon entering the residence, Crabtree questioned Johnson about the red mark on her face and she responded that Marine had hit her. During the colloquy with Johnson, Crabtree remained focused on the activities of Marine and Pendleton through the kitchen window. Outside, Pendleton asked Marine where he was going and Marine responded that he was leaving. Pendleton cautioned him to wait and Marine responded in a belligerent and defiant manner. Inside the home Crabtree noticed Marine shouting and pointing his finger at Pendleton in an animated and agitated fashion and proceeded outside.

Once outside, Crabtree asked Marine, "Did you hit her?" and Marine responded, "Yes, I hit that f——ing bitch." Due to Marine's admission and the evidence of abuse on Johnson's face, Crabtree approached Marine and informed him that he was under arrest. Marine immediately recoiled and placed his right arm inside his left jacket pocket and pulled out a 9-mm Smith & Wesson gun. He held the gun approximately one and a half inches from Crabtree's face. Both officers immediately drew their weapons and started backpedaling to locate a safe haven or "cover" from the threat of death by Marine's gun. Crabtree repeatedly asked Marine to drop his gun. Marine adamantly refused. Crabtree found "cover" behind the police cruiser and radioed a distress signal, "officer in trouble." Pendleton was crouched underneath Johnson's vehicle at the front of the driveway.

Marine continued to move towards Crabtree with his gun pointed towards the officer. Crabtree remained frozen. He testified that he had nowhere else to go. Had he moved he would have been in plain view and easily shot. While Marine continued toward Crabtree, Officer Pendleton escaped from the driveway into a nearby neighbor's front porch. Crabtree, in fear for his life, cocked his firearm and was about to fire when Johnson exited the residence and stepped in front of Marine and started shoving him and yelling at him to put the gun down. Marine tried to get around Johnson and continued toward Crabtree.

As Johnson exited the home, another officer arrived on the scene. As that officer approached Crabtree's vehicle, Johnson began pleading with the officers to call Captain Asher, a friend of Marine's, to talk him down. Marine eventually overpowered Johnson, passed by the patrol car, and made his way, gun in hand, to the front porch. Meanwhile, one of the officers placed Johnson in the vehicle and another radioed ahead for Captain Asher. Captain Asher arrived momentarily and managed to retrieve the gun from Marine. Marine was immediately placed under arrest.

Marine was indicted on two counts of kidnapping with firearm specifications, two counts of abduction with firearm specifications, and one count of carrying a concealed weapon.[1] The case proceeded to trial. After two days of testimony and deliberations, the jury returned a verdict of guilty on all counts. The abduction convictions were subsequently merged with the kidnapping convictions for purposes of sentencing. On July 20, 2000, Marine was sentenced to three years on each kidnapping conviction to be served consecutively. In addition, Marine was sentenced to three years as a mandatory and consecutive term for the gun specification. Marine was also sentenced to a period of six months in prison for the crime of carrying a concealed weapon, that term to run concurrently to the others.

On appeal from that judgment and sentencing entry, Marine asserts the following three assignments of error:

"1. The trial court erred in overruling appellant's Crim.R. 29 motion where the facts do not support a kidnapping conviction, thereby depriving appellant of due process of law under the Fifth and Fourteenth Amendments to the U.S. Constitution.

"2. The trial court abused its discretion by denying appellant's motion for a continuance until the following Monday to present a physician witness.

"3. The trial court committed prejudicial error by sentencing appellant to consecutive terms of incarceration relative to multiple counts of an indictment, all which pertained to the same act, without sufficient findings as mandated by R.C. § 2929.14(E)(4)."

In his first assignment of error, Marine asserts that the trial court erred by failing to grant his Crim.R. 29 motion for acquittal because the prosecution did not present evidence sufficient to prove the requisite elements of kidnapping.

Crim.R. 29(A), motion for judgment of acquittal, provides:

---

1. The charge of carrying a concealed weapon also included a gun specification, but that specification was later dismissed by the trial court.

"The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, information or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve a ruling on a motion for judgment of acquittal made at the close of the state's case."

When reviewing a trial court's decision regarding a Crim.R. 29 motion, the appellate court is bound by the standard of review set forth in *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, which states:

"Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."

However, *Bridgeman, supra,* must be read in conjunction with the sufficiency of evidence test put forth in *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. In *Jenks, supra,* the court held:

"An appellate court's function when reviewing the sufficiency of evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

A review of the evidence leads this court to conclude that the trial court properly overruled Marine's motion for acquittal pursuant to Crim.R. 29(A).

Marine was charged with kidnapping, a violation of R.C. 2905.01. R.C. 2905.01 states:

"(A) No person, by force, threat or deception * * * shall remove another from the place where he is found or restrain him of his liberty for any of the following purposes:

"* * *

"(5) To hinder, impede, or obstruct a function of government, or to force any action or concession on the part of the governmental authority."

In support of his claim that the trial court erred by failing to grant his Crim.R. 29 motion, Marine argues that the evidence presented by the prosecution on the charges of kidnapping was insufficient. Specifically, Marine argues that the prosecution failed to prove that the officers, Crabtree and Pendleton, were in any way restrained of their liberty because the testimony given at trial by the officers

indicated that both had their weapons drawn, pointed, and ready to fire at Marine and, as a result, any restraint that may have existed is vitiated because the officers could have escaped or neutralized Marine with a single shot. Marine does not dispute that sufficient evidence was presented by the prosecution to satisfy the remaining elements necessary for a finding of guilt under R.C. 2905.01(A)(5).

■ As stated above, kidnapping requires either that Marine "restrain" Officers Crabtree and Pendleton of their liberty to move or carry the officers away from the place where they are found. The facts do not support the assertion that the officers were carried away and, as a result, the prosecution presented evidence that the officers were restrained of their liberty of movement. Officers Pendleton and Crabtree testified that they were unable to move from behind vehicles in Johnson's driveway because they were "trapped" and feared that Marine would shoot them if they tried to escape. Their testimony is in part:

"Officer Crabtree

"Q: And why did you stay behind the vehicle?

"A: I had no cover to go anywhere. If I went to my left, I was in plain view and I knew that I'd have a chance of being shot. If I went to my right there was no cover, I'd be shot. And I had nowhere to go behind me * * *.

"I had my weapon aimed at the defendant to protect myself. I knew my biggest fear was, if he got to the front of the patrol car that I was going to have to shoot, because I had nowhere to go. He got towards the front of the cruiser, and I had to take the slack out of my trigger for fear of my life, because I knew if he got to the front he had a shot, because I had nowhere else to go.

"Officer Pendleton

"Q: And during that five minutes that you were trapped behind the pickup truck, was there anywhere for you to escape to?

"A: No, sir.

"Q: And why is it that you felt you couldn't escape out from behind the pickup truck?

"A: I felt if I came out from behind the truck I would be a target, an easy target on the one end, and on the other end I felt, if shots were being fired, I would be in line with Officer Crabtree's line of fire."

After thorough review of the record, we find that reasonable minds could reach differing conclusions as to whether the element of restraint indeed existed and was proven by the prosecution beyond a reasonable doubt. However, after viewing all the evidence in the light most favorable to the prosecution, a rational

trier of fact could have found restraint, in addition to the other elements of kidnapping, and thus found Marine guilty of kidnapping.

■ Despite this, Marine contends that the prosecution incorrectly charged Marine with kidnapping when the evidence presented justifies only a charge of resisting arrest. However, this argument is without merit. As stated above, the prosecutor provided evidence sufficient to convict Marine of kidnapping. Furthermore, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision of whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes* (1978), 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604, 611; *State v. Steffen* (1987), 31 Ohio St.3d 111, 124–125, 31 OBR 273, 284–286, 509 N.E.2d 383, 395–396.

No error having been shown, Marine's first assignment of error is overruled.

■ In his second assignment of error, Marine claims that the trial court abused its discretion by failing to grant Marine a continuance so that he might present an expert medical witness. Specifically, Marine asserts that the trial court erred in failing to grant his continuance until the following Monday because Marine's attorney, relying on local rules, had scheduled his physician witness to appear on Monday following the weekend and the trial court had scheduled the trial to continue until finished on Saturday. Furthermore, Marine argues that the failure of the trial court to grant his continuance prejudiced his case because the physician witness was to testify to Marine's lack of intent and "diminished capacity" at the time of the crime.

In *State v. Beuke* (1988), 38 Ohio St.3d 29, 526 N.E.2d 274, the Ohio Supreme Court held that the granting of a continuance is a matter within the sound discretion of the trial court, and will be disturbed on appeal only if there has been an abuse of discretion.

Further, in *State v. Unger* (1981), 67 Ohio St.2d 65, 21 O.O.3d 41, 423 N.E.2d 1078, the court stated that in determining whether the trial court has abused its discretion, appellate courts should apply a balancing test which takes cognizance of all the competing considerations:

■ "In evaluating a motion for a continuance, a court should note, *inter alia*: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or

whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." (Citations omitted.)

Marine's jury trial began on July 14, 2000. Before the commencement of the trial, the court duly informed both counsel and the jury that the trial would occur all day on Friday and continue on Saturday if necessary. The trial court also questioned the jury members on their ability to appear on Saturday and the jury confirmed their ability to attend on Saturday. The trial commenced. Later that afternoon, Marine made a motion for continuance asserting that his expert witness could not be here on Saturday and asked the court to continue the trial to Monday. The trial court overruled his motion based in part on the fact that the courtroom was unavailable on Monday and the jury had already agreed to be here on Saturday.

Marine now asks this court to reverse the decision of the trial court when it overruled his motion to continue because the inability of his physician witness to testify as to his mental state prejudiced Marine. However, after thorough review of the record, this court cannot say that the trial court abused its discretion in overruling Marine's motion for a continuance. As stated above, the trial court was required to balance the potential prejudices to all parties to the case that may arise if a continuance was granted. The trial court did so.

Furthermore, the evidence that was to be presented by Marine's physician witness related to Marine's diminished capacity and inability to commit the crime of kidnapping on February 1, 2000, is not admissible in the courts of Ohio. As stated in *State v. Wilcox* (1982), 70 Ohio St.2d 182, 24 O.O.3d 284, 436 N.E.2d 523, paragraphs one and two of the syllabus: "The partial defense of diminished capacity is not recognized in Ohio" and "[a] defendant may not offer expert psychiatric testimony, unrelated to the insanity defense, to show that the defendant lacked mental capacity to form the specific mental state required for a particular crime or degree of crime."

No error having been shown, Marine's second assignment of error is overruled.

In his final assignment of error, Marine claims that the trial court erred in sentencing Marine because it failed to make the findings necessary to support the imposition of consecutive sentences under R.C. 2929.14(E)(4) and thus the sentence is invalid.

At the outset we observe that the sentencing provisions set forth in the Revised Code are to be strictly construed against the state and liberally construed in favor of the accused. R.C. 2901.04(A). Furthermore, an appellate court hearing an appeal of a sentence may "increase, reduce, or otherwise modify

a sentence that is appealed * * * or may vacate the sentence and remand the matter to the trial court for resentencing. The appellate court may take any action authorized by this division if it clearly and convincingly finds * * * [t]hat the sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(b).

When imposing consecutive sentences, a trial court is bound by the requirements of R.C. 2929.14(E)(4). R.C. 2929.14(E)(4) states:

"If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

"(a) The offender committed multiple offenses while the offender was awaiting trial or sentencing * * *

"(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.

"(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

Furthermore, this court has repeatedly held that "it is the trial court's findings under R.C. 2929.03, 2929.04, 2929.11, 2929.12, 2929.14, and 2929.19 which in effect, determine a particular sentence and that a sentence unsupported by these findings is both incomplete and invalid." *State v. Hay* (Dec. 19, 2000), Union App. No. 14–2000–24, unreported, 2000 WL 1852725; *State v. Bonanno* (June 24, 1999), Allen App. Nos. 1–98–59 and 1–98–60, unreported, 1999 WL 446439; *State v. Martin* (1999), 136 Ohio App.3d 355, 736 N.E.2d 907.

Comprehensive review of the record reveals that the trial court failed to make the necessary findings as required by R.C. 2929.14(E)(4)(a) through (c). The trial court wholly failed even to mention the factors required by R.C. 2929.14(E)(4) much less list an additional reason as required by R.C. 2929.14(E)(4)(a) through (c). As we have previously stated, a trial court must strictly comply with the mandates set forth in the relevant sentencing statutes. As the trial court failed to make the requisite findings on the record at the sentencing hearing, we find, by clear and convincing evidence, that the sentence imposed is contrary to law.

Accordingly, Marine's third assignment of error is sustained. Having found error prejudicial to the appellant herein, in the particulars assigned and argued,

we remand this case to the trial court for further proceedings not inconsistent with this opinion.

*Judgment reversed*
*and cause remanded.*

SHAW and HADLEY, JJ., concur.