OPINION
{¶ 1} This appeal is brought pro se by plaintiff-appellant, Nathan Graham, from the judgment of the Municipal Court of Findlay, Ohio, Civil Division, dismissing appellant's civil claim against defendants-appellees, the Audio Clinic, et al., with prejudice.[1]
 {¶ 2} On or about September of 1998, plaintiff-appellant, Nathan Graham (hereinafter, "Graham") purchased several pieces of car-stereo equipment from an individual third-party seller. It is undisputed that the individual from whom Graham acquired the stereo equipment had fraudulently purchased the stereo equipment from the "Audio Clinic" by "paying" for the items with an invalid personal check.
 {¶ 3} After discovering that the car-stereo equipment had been fraudulently purchased, the owner of the Audio Clinic, Penny Snook, reported the incident to the Findlay Police Department. Shortly thereafter, the Findlay Police Department, seized Graham's motor vehicle pursuant to a valid search warrant. Once in police custody, Graham's motor vehicle was inspected by an employee from the Audio Clinic. Through the use of serial-code identification, several pieces of stereo equipment located in Graham's car were confirmed to be the stereo equipment that had been unlawfully acquired through the use of the fraudulent check. The illegally obtained stereo equipment was then removed from Graham's car and was repossessed by the Audio Clinic.
 {¶ 4} Stemming from this incident, Graham filed a civil complaint on November 9, 2001, against defendants-appellees, Penny Snook, Philip Snook, and the Audio Clinic (collectively referred to as "appellees") in the Findlay Municipal Court for repair costs to his motor vehicle and for replacement or cost of replacement of the stereo equipment that he alleges was unlawfully repossessed from his vehicle by appellees.
 {¶ 5} We note that throughout these proceedings, up through and including the appeal herein, Graham has been incarcerated in prison, where he remains. Consequently, Graham has been unable to personally appear at any time before the Findlay Municipal Court in support of his claim against appellees. The criminal offense for which Graham is currently serving a prison sentence is otherwise unrelated to the instant appeal.
 {¶ 6} After originally filing his civil complaint against appellees onNovember 9, 2001, Graham voluntarily dismissed his complaint against appellees with only three days remaining before the scheduled trial date. However, approximately ten months later on July 28, 2003, Graham, proceeding pro se, re-filed said complaint. Subsequently, Graham hired Patterson Higgins ("Higgins") as his attorney. Higgins made his first appearance on behalf of Graham before the Municipal Court of Findlay on October 13, 2003.
 {¶ 7} After the trial court granted Graham several extensions to handle various pre-trial matters, Graham's civil complaint was ultimately scheduled to go to trial on July 19, 2004. However, approximately one month before the scheduled trial date, Higgins filed a motion for leave to withdraw as Graham's counsel, discussed in detail, infra. On the following day, the trial court granted Higgins' motion to withdraw.
 {¶ 8} Approximately three weeks after Higgins' withdrawal from the case, and with only five days remaining before the scheduled trial date of July 19, 2004, Graham moved the trial court for a continuance so that he could seek new legal counsel. Additionally, Graham filed a motion for recusal of the Municipal Court Judge, alleging judicial bias. On the following day, which was July 15, 2004, the trial court denied both of Graham's motions and the matter proceeded to trial on July 19, 2004.
 {¶ 9} On the day of the trial, the only appearance made on behalf of Graham was by his mother, Becky Graham. The trial court determined she could not act as her son's attorney or otherwise represent his legal interests in the matter. Consequently, based upon Graham's failure to prosecute his claim, the trial court dismissed Graham's complaint against appellees with prejudice on July 19, 2004.
 {¶ 10} It is from this judgment that Graham now appeals and sets forth four assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I The trial court erred and abused its discretion in refusing to recusehimself after his predisposition was demonstrated in a properly filedmotion for recusal. (Entry, 7/15/04)
 {¶ 11} Despite Graham's contention, as set forth by his assignment of error herein, for the reasons provided below, we find that Graham failed to follow the proper procedures required to recuse a municipal court judge, and, therefore, overrule Graham's first assignment of error.
 {¶ 12} The exclusive means by which a litigant may seek disqualification of a municipal court judge is set forth in R.C.2701.031.[2] See State v. Hunter, 151 Ohio App.3d 276, 2002-Ohio-7326, ¶ 17, citations omitted. R.C. 2701.031 provides, in pertinent part, that:
(A) If a judge of a municipal or county court allegedly * * * has abias or prejudice for or against a party to a proceeding pending beforethe judge * * * any party to the proceeding * * * may file an affidavitof disqualification with the clerk of the court in which the proceedingis pending.
* * *
(E) If the clerk of a municipal or county court accepts an affidavit ofdisqualification * * * and if [the presiding judge of the court of commonpleas of the county in which the affidavit was filed] is notified * * * ofthe filing of the affidavit [and] * * * determines that the interest,bias, prejudice, or disqualification alleged in the affidavit exists, the[presiding] judge [of the court of common pleas] * * * shall issue anentry that disqualifies the judge against whom the affidavit was filedfrom presiding in the proceeding and designate another judge * * * topreside in * * * place of the disqualified judge. (Emphasis added.)
 {¶ 13} The record herein clearly demonstrates that while Graham filed a "motion for recusal of judge" with the Municipal Court on July 14, 2004, he failed to file an affidavit of disqualification with the Clerk of the Municipal Court of Findlay, or with the Clerk of the Common Pleas Court of Hancock County as required by R.C. 2701.031. Graham's "motion for recusal," on its own, does not meet the requirements to challenge the qualification of a municipal court judge. Because Graham has failed to comply with the statutory requirements, he has failed to preserve this issue for appeal. See Hunter, 151 Ohio App.3d 276, ¶ 21, citation omitted; see also Ricker v. Parknavy, 12th Dist. No. CA2003-12-039,2004-Ohio-5822, ¶ 15; State v. Lewis, 2d Dist. No. 18735, 2001-Ohio-1460.
 {¶ 14} Moreover, pursuant to plain language of R.C. 2701.031(E), supra, the authority to pass upon the disqualification of a municipal court judge exclusively vests in the presiding judge of the court of common pleas of the county in which the affidavit of disqualification was filed. Thus, even if this issue were properly presented for our review, this court has no jurisdiction or authority to vacate a trial court's judgment regarding an appellant's claim of judicial bias. See State v.Hunter, 151 Ohio App.3d 276, 2002-Ohio-7326, ¶ 21, citing, Beer v.Griffith (1978), 54 Ohio St.2d 440.[3]
 {¶ 15} Accordingly, appellant's first assignment of error is without merit, and is hereby overruled.
 ASSIGNMENT OF ERROR NO. II The trial court erred and abused its discretion in granting appellant'scounsel's motion to withdraw mere days prior to the scheduled trial datewhere appellant demonstrated in his opposing memorandum that counsel'sasserted reasons for the proposed withdrawal were untrue and pretextual,[sic] and where appellant asserted that the granting of leave to withdrawwould impermissibly hinder the ability to prosecute his case. (Order,6/22/04)
 {¶ 16} In arguing this assignment of error, Graham first maintains that the trial court abused its discretion in granting Higgins' motion to withdraw as counsel because "the evidence submitted affirmatively demonstrates that Higgins' asserted reasons for withdrawal were untrue and pretextual." In addition, Graham also asserts that he did not receive sufficient notice of Higgins withdrawal. Upon consideration of these arguments, we affirm the judgment of the trial court for the reasons that follow.
 {¶ 17} It is within the discretion of the trial court to grant or deny a motion to withdraw. State v. Deckard (February 6, 1992), 3d Dist. No. 13-91-11, citing State v. Deal (1969), 17 Ohio St.2d 17. The term abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Id., citing State v. Adams (1980), 62 Ohio St.2d 151, 157. Accordingly, a trial court's decision to grant a motion to withdraw will not be reversed on appeal absent an abuse of discretion. However, before a trial court grants such a motion, it has a duty to ensure that the mandates of DR 2-110 of the Code of Professional Responsibility, discussed infra, are followed. Wilson v. Wilson, 154 Ohio App.3d 454,2003-Ohio-4474, ¶ 5. The failure of a trial court to do so is reversible error. Id., citing Bennett v. Bennett (1993), 86 Ohio App.3d 343.
 {¶ 18} In regards to Graham's first assertion, DR 2-110(C), et seq., of the Code of Professional Responsibility, provides, in pertinent part, that a lawyer may seek permissive withdrawal if the reason is either because the client has "render[ed] it unreasonably difficult for the lawyer to carry out his or her employment effectively[;]" or has "[d]eliberately disregarded an agreement or obligation to the lawyer asto expenses or fees." See DR 2-110(C)(1)(d) and (f), respectively, emphasis added.
 {¶ 19} In the case sub judice, Higgins' June 21, 2004 motion to withdraw stated, in pertinent part, as follows:
[r]easons for said request are that the defendant [(Graham)] has failed to cooperate with counsel in that he has failed to pay necessary fees for this attorney to go forward with the deposition in Mansfield, Ohio, scheduled for June 25, 2004, making it impossible to continue the attorney client relationship.
 {¶ 20} Our review of the record clearly indicates that a conflict existed between Graham and Higgins regarding how, when, and by whom, Graham's depositional testimony was to be taken. In fact, during his representation of Graham, Higgins had filed a motion, which was granted by the trial court, to allow Graham an extension of time to have his depositional testimony taken. Despite being granted this extension, Higgins was unable to coordinate the time, place and by whom Graham's deposition was going to be taken, in significant part due to Graham failure to pay Higgins the fees associated with having a deposition taken. Graham's inability to resolve this matter with Higgins was the cause of Higgins filing a motion for withdrawal.
 {¶ 21} Based upon the preceding, we find that the reasons set forth by Higgins in support of his motion to withdraw, which are supported by the record herein, are sufficient to warrant Higgins' permissive withdrawal as Graham's counsel pursuant to DR 2-110(C)(1)(d) and (f). Accordingly, we hold that the basis upon which the trial court relied in granting Higgins' motion to withdraw was not an abuse of discretion.
 {¶ 22} Graham's second assertion is that he did not receive adequate notice of Higgins' withdrawal. In this regard, DR 2-110(A)(2) provides in relevant part that:
 * * * a lawyer shall not withdraw from employment until he has takenreasonable steps to avoid foreseeable prejudice to the rights of hisclient, including giving due notice to his client, allowing time foremployment of other counsel, delivering to the client all papers andproperty to which the client is entitled, and complying with applicablelaws and rules. Emphasis added.
 {¶ 23} In the case herein, Higgins' motion to withdraw expressly provided that he had served notice upon Graham by mailing Graham a copy of the motion to withdraw on the same day that it was filed, i.e., on June 21, 2004. In fact, as evidence of said notice, in his "memorandum in opposition to counsel's motion to withdraw," Graham informed the trial court that he had been served with a copy of Higgins' motion to withdraw on June 24, 2004. Graham, therefore, received notice of Higgins' intention to withdraw as counsel within three days of it being filed, and within twenty-five days of the scheduled trial date of July 19, 2004. Accordingly, we find that as required by DR 2-110(A)(2), Graham had adequate notice of Higgins' intention to withdraw, and as such, had sufficient time to seek new counsel in preparation of the scheduled trial date, if he so chose to do so.
 {¶ 24} Consequently, we find that the trial court did not abuse its discretion in granting Higgins' motion to withdraw. Graham's second assignment of error is, therefore, overruled.
 ASSIGNMENT OF ERROR NO. III The trial court erred and abused its discretion in refusing togrant a properly filed motion for continuance for the purpose ofattempting to find a replacement attorney after allowing counselto withdraw mere days prior to trial. (Entry, 7/15//04)
 {¶ 25} On July 14, 2004, five days before the scheduled trial date, Graham filed a motion in the trial court to continue the trial to a later date. The basis of Graham's motion to continue was that he needed additional time to seek new legal counsel to replace Higgins. One day after Graham's motion was filed, and four days before the scheduled trial date, the trial court, on July 15, 2004, overruled Graham's motion for a continuance. In this assignment of error, Graham maintains that the trial court erred in so doing.
 {¶ 26} The Ohio Supreme Court has held that the granting of a continuance is a matter within the sound discretion of the trial court and will only be disturbed on appeal absent an abuse its discretion.State v. Marine, 141 Ohio App.3d 127, 133, 2001-Ohio-2147, citingState v. Beuke (1988), 38 Ohio St.3d 29. In addition, when determining whether a trial court has abused its discretion in sustaining or overruling a motion for a continuance, the Supreme Court of Ohio has held that an appellate court should apply a balancing test and take cognizance of all the competing considerations, including:
 * * * the length of the delay requested; whether other continuanceshave been requested and received; the inconvenience to litigants,witnesses, opposing counsel and the court; whether the requested delay isfor legitimate reasons or whether it is dilatory, purposeful, orcontrived; whether the defendant contributed to the circumstance whichgives rise to the request for a continuance; and other relevant factors,depending on the unique facts of each case.
 Marine, 141 Ohio App.3d at 133-134, citing State v. Unger (1981),67 Ohio St.2d 65.
 {¶ 27} In the case sub judice, the trial court undertook such an evaluation and specifically found that: Graham had previously voluntarily dismissed his original November 9, 2001 complaint against appellees; since the time of re-filing his complaint against appellees on July 28, 2003, the trial court granted Graham two continuances, two extensions, and held multiple pre-trial conferences; Graham had approximately one month since the time of receiving notice of Higgins' motion to withdraw to retain new counsel, but failed to do so; and that any further delay to the then nearly three year old original complaint would inconvenience and be prejudicial to appellees.
 {¶ 28} The trial court's findings are supported by the record. In addition, as discussed in Graham's second assignment of error, supra, the record further provides that Graham contributed to the circumstance which gave rise to his request for a continuance, i.e., by failing to cooperate with his former attorney to meet the deadline for having his depositional testimony taken.
 {¶ 29} Accordingly, we cannot find that the trial court abused its discretion in denying Graham's motion for a continuance.
 {¶ 30} Graham's third assignment of error is, therefore, overruled.
 ASSIGNMENT OF ERROR NO. IV The trial court erred and abused its discretion in dismissing theaction for failure to prosecute by incarcerated plaintiff who requested,but was not granted, [sic] transportation, without first consideringother alternatives which would have led to the resolution of the case onits merits. (Tr. 10)
 {¶ 31} In this assignment of error, Graham maintains that the trial court erred in sua sponte dismissing his civil complaint with prejudice. A decision whether to sua sponte dismiss a complaint for failure to prosecute is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. Sgro v. McDonald'sRestaurant (1984), 21 Ohio App.3d 41.
 {¶ 32} In general, "[c]ourts have inherent power to manage their own affairs and may dismiss an action for failure to prosecute." Spriggs v.Ousley (May 22, 1998), 4th Dist. No. 97CA814. Specifically, Civ.R 41(B)(1) provides, in pertinent part, that "[w]here the plaintiff fails to prosecute, or comply with these rules or any court order, the court upon * * * its own motion may, after notice to the plaintiff's counsel, dismiss an action or claim. * * *." Pursuant to Civ.R. 41(B)(1), when determining whether a civil complaint should be sua sponte dismissed with prejudice for a plaintiff's alleged failure to prosecute, the trial court should consider "* * * the drawn-out history of the litigation and other evidence that a plaintiff is deliberately proceeding in a dilatory fashion or has done so in a previously filed, and voluntarily dismissed, action." Spriggs, supra, citing Link v. Wabash RR. Co. (1962),370 U.S. 626, 633-635, Indus. Risk Insurers v. Lorenz Equip. Co. (1994),69 Ohio St.3d 576.
 {¶ 33} The record herein contains evidence which weighs heavily against Graham and in favor of the trial court's decision to dismiss Graham's complaint with prejudice. Specifically, as discussed in our analysis of Graham's third assignment of error, supra, it is evident that the history of the litigation has been drawn-out; that Graham has already once voluntarily dismissed said action against appellees; and that Graham had been proceeding in a dilatory fashion by failing to arrange to have his depositional testimony taken. Despite the presence of these factors, Graham, however, maintains that, pursuant to the Ninth District Court of Appeal's decision in Laguta v. Serieko (1988), 48 Ohio App.3d 266, that the trial court herein nevertheless abused its discretion because it had not first considered "other alternatives" which would have lead to a resolution of his action upon its merits. Id., at 267.[4] We find that the trial court made the necessary considerations prior to dismissing Graham's complaint with prejudice and affirm the judgment of the trial court.
 {¶ 34} As stated by the Court in Laguta, "[i]f the risks and expense involved in transporting the prisoner to the courthouse are prohibitive," a trial court may consider, but is not required to implement, other alternatives to dismissal with prejudice, including:
 * * * a bench trial in the prison, trial by depositions, appointmentof pro bono counsel to assist the plaintiff, postponement of proceedingif the plaintiff's release is imminent, or dismissal without prejudiceleaving open the possibility of the plaintiff's refiling his case at alater date." Laguta, at 267; emphasis added.
 {¶ 35} In the case sub judice, the trial court did in fact consider, and attempted to implement other alternatives which would have allowed Graham to effectively prosecute his claim. Specifically, the trial court granted Graham an extension of time to allow him to have his depositional testimony taken. The trial court made clear to Graham that submission of his depositional testimony was the best option available to enable him to prosecute his claim on the merits. See. Civ.R. 30 and 32. Graham, however, failed to adhere to the court's instruction.
 {¶ 36} Accordingly, based upon the history of the litigation and the dilatory actions made by Graham in failing to have his depositional testimony taken, we find that the trial court did not act arbitrarily, unreasonably, or unconscionably in ordering that Graham's complaint be dismissed with prejudice. See Drescher v. Summers, 30 Ohio App.3d 271,273-274.
 {¶ 37} Graham's fourth assignment of error is, therefore, overruled.
 {¶ 38} Having found no error prejudicial to appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 Bryant and Shaw, J.J., concur.
[1] We note that appellees have failed to file an appellate brief in this matter. App.R. 18(C) provides that in the event of such a failure, "* * * the [appellate] court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action." While we stress the importance of filing a brief and caution parties against this neglectful approach to appeals, as applied to the case sub judice, we nevertheless, find that Graham has failed to convince us that the trial court erred.
[2] Similarly, for the procedures required to seek disqualification of a common pleas court judge see R.C. 2701.03.
[3] Similarly, the Supreme Court of Ohio in Beer v. Griffith (1978),54 Ohio St.2d 440, 441-442, held that, pursuant to R.C. 2701.03 and Section 5(C), Article IV of the Ohio Constitution, the authority to pass upon the disqualification of a common pleas court judge exclusively vests in the Chief Justice of the Supreme Court, and, therefore, a court of appeals does not have the authority to determine disqualification of common pleas court judges.
[4] See also In re Hall (1999), 135 Ohio App.3d 1, 6, ("An incarcerated litigant has no absolute right to be present for civil litigation. However, the trial court has many options it must explore before it may arbitrarily dismiss an action for failure of an incarcerated litigant to appear."), citing Drescher v. Summers (1986),30 Ohio App.3d 271.