[Cite as *Snyder v. Waldron*, 2013-Ohio-3416.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

| | |
|---|---|
| JOHN SNYDER, ET AL., | : |
| | : |
| Plaintiffs-Appellees, | : Case No. 12CA9 |
| | : |
| vs. | : |
| | : DECISION AND JUDGMENT |
| NOAH WALDRON, ET AL., | : ENTRY |
| | : |
| Defendants-Appellants. | : **Released: 07/26/13** |

_____
APPEARANCES:

Lorene G. Johnston, Johnston Law Office, Jackson, Ohio, for Appellants
Noah Waldron and Holly Waldron.

Sierra Meek, Nolan & Meek Co., LPA, Nelsonville, Ohio, for Appellees
John and Patricia Snyder.

Matthew C. Workman, Smith, Rolfes, & Skavdahl Co., LPA, Columbus,
Ohio, for Appellee United Ohio Insurance Company.
_____

McFarland, P.J.

{¶1} Noah Waldron and Holly Waldron appeal the trial court's

decision granting judgment against them in favor of John and Patricia

Snyder and United Ohio Insurance Company in the amount of $5,957.01,

plus court costs and interest. Appellants argue the trial court erred in (1) its

findings that the parties' implicit agreement constituted a month-to-month

tenancy; (2) its calculation of damages; and (3) its denial of Appellants'

request to continue trial.  Having reviewed the record, we find the trial court's judgment was not in error. We overrule Appellants' three assignments of error and affirm the judgment of the trial court.

FACTS

{¶2}  The facts pertinent to this appeal are as follows.  Appellants Noah Waldron, Holly Waldron (hereinafter "Waldrons"),[1] along with Eric Krause and Paige Patterson, entered into a written lease agreement with Appellee John Snyder on July 25, 2008, for rental of residential premises located at 10646 S.R. 550 in Athens, Ohio. The terms of the lease provided rent at $800.00 a month for a twelve-month period.  The group paid a security deposit of $800.00.

{¶3}  On September 1, 2009, the Appellants and Eric Krause entered into a second written lease agreement for rent of the same residential premises for seven months at $600.00 a month.  The lease period was to be over in April 2010.  When the lease expired, Appellee and Appellants discussed a new lease agreement which was contemplated at $700.00 per month.  During the course of the tenancy, Noah Waldron performed miscellaneous maintenance and repairs. When this occurred, Appellee would

---

[1] The Waldrons are brother and sister.

adjust the monthly rent accordingly.  No formal lease agreement was executed by the parties after March 31, 2010.

{¶4}  On October 8, 2010, Appellee noticed Appellants appeared to be removing furniture from the premises. On October 15, 2010, Appellee noticed the door of the residence standing open and he entered to find a "trashy abandoned mess." Appellee placed a padlock on the back door, sometime after October 15th.  Appellants never gave Appellant a forwarding address.  Consequently, he retained their portion of the security deposit, a total of $400.00.

{¶5}  On January 21, 2011, John Snyder filed a complaint for unpaid rent, unpaid utilities, damages, and attorney fees against Eric Krause, Phillip Buffington Timothy Moreland, and Appellants. [2] On February 24, 2011, the Waldrons filed separate answers with counterclaims. The Appellants denied all allegations in the complaint.  In their counterclaims, Appellants asserted the parties had a month to month oral agreement. They further alleged Noah Waldron had informed Appellee of his intent to be married on September 25, 2010 and had provided notice that they would no longer be residing in the premises after September 25, 2010.  Appellants further alleged Appellee changed the locks on the house on October 1, 2010 and seized various

_____

[2] Eric Krause and Timothy Moreland were eventually dismissed from the suit and did not proceed to trial. Phillip Buffington filed a timely answer and counterclaim and proceeded to trial.  However, he was granted a directed verdict and dismissed his counterclaim.

personal belongings in the amount of $2,170.00. They also alleged

Appellee owed Noah Waldron $2,165.00 for labor performed at the request

of Appellee.

{¶6} On November 3, 2011, United Ohio Insurance Company filed a

motion to intervene as party plaintiff and demanded judgment for its

subrogated interest. On November 9, 2011, Appellants filed a motion to

continue trial and a memorandum contra the motion to intervene.

Appellants argued if the motion to intervene was granted, they would need

time to be served, respond, and pursue discovery with the intervening

plaintiff. The trial court granted the motion to intervene and denied the

motion to continue trial. [3]

{¶7} The testimony at trial is summarized as follows. Appellee

testified Eric Krause inspected the rental unit on several occasions prior to

moving in the rental premises pursuant to the first lease. To his knowledge,

Appellants did not do a prior inspection. However, after taking possession of

the rental premises, the Appellants did not voice complaints.

{¶8} After the second lease expired on March 31, 2010, Appellants

paid $600.00 a monthly rent for April and May 2010. Appellee received

---

[3] On November 30, 2011, the Waldrons filed a motion to join Patricia Snyder, wife of John Snyder, as a necessary party due to her joint ownership of the rental property. The motion was granted. However, Mrs. Snyder did not execute the lease agreement or deal with the various tenants. She did not testify at trial. Throughout this opinion, "Appellee's" testimony refers to that of John Snyder.

rent of $700.00 a month for July and August, 2010.  He did not receive rent in June, September, October, or November 2010. He and Noah Waldron agreed Noah's performance of labor in June 2010 would be accepted in lieu of rent. In August 2010, Noah Waldron indicated to Appellee he "might be getting married and moving away." To Appellee's knowledge, the Appellants were residing in the rental property in September 2010.  Appellee testified he was never given notice Appellants were leaving.

{¶9}  After Appellee discovered the rental premises abandoned on October 15th, he contacted his insurance agency.  Appellee identified copies of  76 photographs he took of damage to  the residence which, he testified, was not present when Appellants took possession of the premises.  An adjuster on behalf of United Ohio Insurance also inspected the residence and took additional photographs.  Counsel stipulated United Ohio eventually paid $2,108.51 to Appellee for purchase of materials and labor to make repairs.

{¶10}  On cross-examination, Appellee testified he had a $500.00 deductible, pursuant to the United Ohio policy.  He testified the total number of hours spent on labor for repairs was 196. He admitted he did not have pictures of the premises before Appellants took possession.  He also admitted he lives 100 yards or less from the property.

{¶11}  Ralph Sikorski, office manager of the Sunday Creek Valley Water District, testified his file demonstrated that someone called the office and indicated they were moving from the rental address on October 8, 2010. A final bill was sent to Noah Waldron at an address he provided to the water district office.  The bill demonstrated the water bill had been calculated on October 15th. Appellant sent a note with his final payment, explaining he deducted twenty-one dollars from his bill because of the extra week between October 8th and October 15th, included in the bill.

{¶12}  United Ohio Insurance Company's claim representative Chris Clapper identified Appellee Snyder's policy of insurance and testified vandalism was a covered peril.  He testified United Ohio did not reimburse Appellee Snyder for all the claims at issue because, based upon his inspection, not all of the damage appeared to be vandalism. Mr. Clapper also identified a damage loss report and photographs he compiled.  He testified the $2,108.51 paid to Appellee Snyder for damages was reasonable.

{¶13}  On cross-examination, Mr. Clapper testified the physical damages he saw that were not covered by the policy included damage done by dogs, damage due to opening the attic, flooring damage, gouges in a stairwell, broken light sockets, broken front railing, damage to wall plates,

wiring and electrical damage, and damage to drywall.   Mr. Clapper admitted he had no way of knowing who or what caused the damages he viewed.

{¶14}  At the close of Appellants' case, they withdrew their counterclaims against Appellee.  After reviewing the testimony and exhibits, the trial court issued its findings on December 7, 2011.  The trial court found Appellees were entitled to judgment against Appellants in the amount of $4,837.01 ($3,637.01 damages plus $1,200 rent) and attorney fees, pursuant to R.C. 5321.05.  The court further found United Ohio Insurance Company was entitled to $2,108.51, and Appellee Snyder was entitled to the balance. The court noted it was not yet a final appealable order as attorney fees were remaining to be determined.  On January 26, 2012, the trial court found in its journal entry that $1,059.41 in attorney fees and $60.59 in court costs was reasonably related to the R.C. 5321.05 damages.  Therefore, judgment was granted to Appellees for a total of $5,957.01.  The trial court designated this entry as its final appealable order.   On February 21, 2012, Appellants herein filed a timely notice of appeal.

ASSIGNMENTS OF ERROR

I.     THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS
       FINDINGS THAT THE CONTRACT PERIOD OF THE LEASE
       WAS A MONTH TO MONTH RATHER THAN A RENEWAL FOR
       AN ADDITIONAL SEVEN (7) MONTHS.

II.    THE TRIAL COURT ERRED AS A MATTER OF LAW AS TO
       THE AMOUNT OF DAMAGES IT AWARDED.

III.   THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING
       TO CONTINUE THE BENCH TRIAL.

ASSIGNMENT OF ERROR I

**{¶15}** Initially, Appellants assert the trial court erred as a matter of

law in its findings that the contract period of the lease was on a

month-to-month basis.  Instead, Appellants argue they were holdover

tenants.  They assert in April 2010, when Appellants paid $600.00 and

Appellee accepted it, a new lease based on the terms of the previous

lease was created.

A.  STANDARD OF REVIEW

**{¶16}**  "We review questions of law de novo.'"  *Mark v. Long,* 4th

Dist. No.07CA2981, 180 Ohio App.3d 832, 907 N.E.2d 759, ¶ 8,

citing *Porter v. Porter,* 4th Dist. No. 07CA3178, 2008 Ohio-5566,

2008 WL 4717164, ¶ 29, quoting *Cuyahoga Cty. Bd. of Commrs. v.

State,* 112 Ohio St.3d 59, 2006-Ohio-6499, 858 N.E.2d 330, ¶ 23.

Determining whether a tenancy has become a tenancy at sufferance,

i.e. "holdover" tenancy, versus a periodic month-to month tenancy is a

question of law.  As such, we analyze the issue without deference to

the trial court's decision. We remain mindful that the Supreme Court

of Ohio recognizes appellate courts should not reverse judgments that are supported by some competent, credible evidence going to all essential elements of the claim. *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984); *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978); *Leslie v. Marowitz,* 4th Dist. No. 05CA1659, 1996 WL 312472 (June 5, 1996). Before we turn to analysis of the issue herein, we review Ohio's law of landlord/tenant relationships.

**{¶17}** In *Ruble v. M & L Properties, Ltd.,* 5th Dist. No. 10-COA-006, 2010-Ohio 6356, 2010 WL 5452110, ¶ 36, the appellate court aptly noted the two distinctions in tenancy law: a tenant in sufferance and a tenant at will, as follows:

> "A party whose lease has been terminated is a tenant in sufferance. A tenant in sufferance can be a trespasser and implies that there is no agreement as to a continued tenancy. A holdover tenant and a tenant at sufferance are the same. Either may be treated as a trespasser. See, *Steiner v. Minkowski,* 72 Ohio App.3d 754, 762, 596 N.E.2d 492 (1991)."

> "The characteristics of a tenancy at will, whether it is created by express contract or by implication of law, are 'uncertainty respecting duration and the right of either party to terminate it by proper notice* * *.' 3 Thompson on Real Property, 33 Section 1020 (1950);* * *" *Myers v. East Ohio Gas Company,* 51 Ohio St.2d 121, 124, 364 N.E.2d 1369 (1977) (Additional citations omitted.) "The law provides that a tenancy at will is created when possession of the premises is taken under an invalid lease. *Manifold v. Schuster,* 67 Ohio

App.3d 251, 586 N.E.2d 1142 (4th Dist.1990). Upon payment and acceptance of the rent, the tenancy at will converts to a periodic tenancy. *Id.*" *Lewis v. Marcum,* Licking App.No. 2003CA00007, 2003 Ohio-3861, ¶ 16.

## B. LEGAL ANALYSIS

**{¶18}** We agree with the trial court's finding that Appellants' occupancy of the premises after March 31, 2010 was not a holdover tenancy, but rather, by agreement and action, was a periodic tenancy for month to month. The evidence and testimony presented at trial demonstrated Appellants executed two leases with Appellee. Appellee testified and the prior rental agreements show that rent was always paid on a monthly basis. The first lease began July 25, 2008 and ended September 1, 2009, essentially a one-year term. The second lease began September 1, 2009 and was to end seven months later. The rent amount of the first lease was $800.00 a month. The rent amount of the second lease was $600.00 a month. When the second lease terminated, the parties discussed entering a new lease but never did. Appellee testified he had discussions with Noah Waldron about a new agreement at $700.00 a month, but Waldron kept postponing. The trial court found in April and May 2010, Appellants continued to live in the rental premises and presumably paid $600.00 a month as they had under the second lease agreement. The court also found Noah Waldron performed labor on the property for Appellee in lieu of rent in June 2010. However,

$600.00 monthly payments did not continue. The court noted beginning in July 2010 and beyond, Appellants paid and Appellee accepted $700.00 a month in rent. Because the record does not show a "meeting of the minds" as to a specific duration for a lease, and because the parties agreed to monthly rent payments, we find no error by the municipal court in determining that the parties were engaged in a periodic month to month tenancy after March 31, 2010. *Owens v. Corbett,* 12th Dist. No. CA2006-09-214, 2007-Ohio-2159, 2007 WL 1309577, ¶ 5.

{¶19} We would further note neither Appellant testified at trial or presented contradictory evidence regarding their discussions with Appellee regarding their tenancy after March 31, 2010. In their respective counterclaims, the Appellants both asserted the parties were operating under a "month to month oral agreement." In the absence of testimony or other evidence in support of Appellants' current theory regarding a "holdover tenancy," we cannot say the trial court's decision in this regard was erroneous. *Prebcor, Inc. v. Fogel,* 12th Dist. No. CA86-04-009, 1986 WL 12099 (Oct. 27, 1986); *Felman v. Coleman,* 2nd Dist. No. 15686, 1996 WL 325501, (June 14, 1996). As such, we affirm the trial court's finding and overrule Appellants' first assignment of error.

ASSIGNMENT OF ERROR II

{¶20}  Next, Appellants argue the trial court erred as a matter of law as to the amount of damages it awarded.   Specifically, Appellants take issue with: (1) the amount awarded for past due rent, $1,200.00; (2) the amount awarded for damage to premises, $3,637.01; and, (3) the award for attorney fees, $1,120.00.  For the reasons which follow, we affirm the judgment of the trial court as to these damage awards.

### A.  STANDARD OF REVIEW

{¶21}  It has been held "[a]n appellate court will not reverse a trial court's decision regarding its determination of damages absent an abuse of discretion."  *Gilbert v. Crosby,* 4th Dist. No. 00CA020, 2001-Ohio-2864 (Jan. 22, 2001), citing *Roberts v. U.S. fid. & Guar. Co.,* 75 Ohio St.3d 630, 634, 665 N.E.2d 664, citing *Blakemore v. Blakmerore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).  See, also, *Henry v. Richardson,* 12th Dist. Nos. CA2010-05-110, CA2010-05-127, 2011-Ohio-2098, at  ¶ 8; *Mtge. Electronic Registration Sys., Inc. v. Lambert,* 8th Dist. No. 94681, 2011-Ohio-461; *Labonte v. Labonte,* 4th Dist. No. 07CA15, 2008-Ohio-5086, at ¶ 18; *Ornemaa v. CTI Audio, Inc.,* 11th Dist. No. 2007-A-0088, 2008-Ohio-4299, at ¶ 137; *Howard v. Bond*, 4th Dist. No. 11CA820, 2012-Ohio-254, 2010 WL 245634, ¶ 9.

**{¶22}** In factual determinations, an appellate court should not substitute its judgment for that of a trial court, which is in a better position to observe the witnesses, view their demeanor, and use these observations to weigh the credibility of witness testimony. *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80; *Cincinnati Insurance Co. v. Evans*, 6th Dist. No. WD-09-012, 2010-Ohio-2622, 2010 WL 2334795, ¶ 45.

### B.  LEGAL ANALYSIS

#### 1.  Past-due Rent Award

**{¶23}** As discussed above, we agree with the trial court's finding that the parties were engaged in a month to month periodic tenancy after March 31, 2010.  The testimony revealed Appellants paid $600.00 monthly rent for April and May, 2010.  The trial court made the following findings:

"7. Thereafter [June 2010] rent was paid as follows:

| | | |
|---|---|---|
| 7/24/10 | $700 | (Exhibit 2) |
| 8/16/10 | $500 | (Exhibit 3) |
| 8/21/10 | $200 | (Exhibit 4) |
| 9/6/10 | $500 | (Exhibit 1) |

No late charge was paid or demanded.  There was no testimony that Snyder incurred any additional expense because of the late payments.  No rent was paid after September 6, 2010."

**{¶24}** The trial court also found Appellants never advised Snyders of a date they were leaving or of their intention to terminate the tenancy.  Moreover, Noah Waldron's payment of the water bill, prorated to October 8,

2010, was "confirming evidence" the Appellants' occupancy ended October 8, 2010. Appellants never advised Snyders they had left the rental premises nor returned the keys.

{¶25}  The trial court further found:

"D. When month to month tenants vacate premises without providing the landlord the thirty day notice of termination required by R.C. 5321.17(B), and the landlord has neither terminated the tenancy nor asked the tenants to leave, the tenant is obligated to pay rent for the month in which they vacate and for the following month.  Iskin, Ohio Eviction and Landlord Tenant Law (3rd Edition), Section XVII(A)(1) citing *Bowman v Community Management Corp.,* 14 Ohio App. 3d 31 (1st Dist. 1984).  Furthermore, due to necessary damage repair and cleaning, the property was not available for new tenants during October and November 2010."

{¶26}  We agree with the trial court's conclusion that Appellants owed Snyders a total of $1600.00 in rent and were entitled to a setoff of $400.00 for their security deposit, leaving a subtotal of $1,200.00 due.  The trial court found Appellee's testimony regarding his lack of notice of termination from Appellants to be credible. The trial court also heard the testimony of the water district representative regarding the payment of the water bill by Noah Waldron through October 8th. Although counsel elicited testimony from Mr. Sikorski that he could not say definitively that Noah Waldron requested shut-off of service on October 8th, he testified the relevant file note requesting shut-off (Exhibit M) was maintained in the

ordinary course of business. We further note Appellants' counterclaim alleging "lockout" does not also allege that Appellee unfairly terminated their water service. We agree with the trial court's determination that Appellants failed to properly notify Appellee of their leaving and maintained occupancy through October 8th, 2010. Based on the evidence contained in the record, we affirm the trial court's finding that past due rent in the amount of $1,200.00 is owed to Appellee.

## 2. Damages to Premises

{¶27} Appellants argue Appellee failed to meet his burden of proof as to Appellees' liability for damage to the rental premises herein. Appellants contend the trial court relied solely on Appellee's opinion as to the condition of the premises and point out Appellee never conducted a "walk-though" with the Waldrons prior to their occupancy. Appellants also assert there is no link between their occupancy of the premises and the damage Appellee discovered on October 15, 2010.

{¶28} R.C. 5321.05 identifies a lengthy list of the obligations tenants owe landlords. *Kelley v. Johnston,* 4th Dist. No. 01CA5, 2001-Ohio-262, 2001 WL 1479243 (Nov. 14, 2001). Accordingly, tenants are liable for waste; however, they are generally not liable to landlords for damages attributed to ordinary wear and tear. *Id.* If damage is not of the type

specified in R.C. 5321.05 or the lease, it will normally be considered wear and tear. *Id.* See generally, White, *Ohio Landlord Tenant Law* (2001 Ed.) Section 7.5. Furthermore, even in the instance of waste, the landlord bears the burden of submitting sufficient evidence to link the damages to the tenant. *Kelley,* supra, citing *Cuzzort v. Rose,* (Nov. 6, 1986), Montgomery App. No. CA9791, unreported.

{¶29} As to damages to the rental premises, the trial court made the following findings of fact:

> "13. John Snyder testified as to certain expenses or estimates for repairs not covered by insurance: $800-$900 for flooring/carpeting, $88.50 breaker box, $20-$40 for carpet cleaning. He also testified that he paid for 196 hours of labor including that covered by insurance but no separate amount was designated for cleaning or non-covered expenses. Mr. Snyder also did not testify to the value of his own work regarding the correction of the electrical and ventilation systems. The Court finds that Mr. Snyder has proven non-insured damages of $1,028.50."

{¶30} In arriving at its findings of fact and conclusions of law, the trial court found the testimony of Appellee, as to the condition of the house prior to Appellants' occupancy, to be credible. Although Appellee had no "before" photographs, Appellee testified the house was in good condition. Although Appellants and Appellee did not do a "walk through," Appellee testified Appellants moved in and made no initial complaints. We do not find the trial court abused its discretion in finding Appellee's testimony to be

credible, especially in the absence of contradictory testimony by either Appellant.

{¶31} Appellants also assert that Appellee obviously saw them leaving on October 8th and failed to secure the premises until October 15th. They argue Appellant failed to link them with the alleged damages. Appellants contend Appellee presented no proof as to who actually damaged the floor covering, no proof that the carpet was ever cleaned, and no proof as to who damaged the breaker box. In making this argument, Appellants rely on *Kelley,* cited above. However, in *Kelley,* the record contained no evidence of the condition of the premises at the time appellants' took possession. Here, the record contained Appellee's testimony that the premises was in good condition and he had no initial complaints from the tenants. Also, the *Kelley* court noted the record contained no evidence concerning the condition or occupation of the premises during a 3 ½ month period after appellant vacated and, therefore, the need for repainting and cleaning could not be properly attributed to appellant. Here, Appellee testified he was given no notice of termination of the tenancy on or about October 8th, although he did see furniture being removed. He discovered the premises abandoned on October 15th, when he found a door standing wide open.

{¶32} Landlords have a duty to mitigate their damages caused by a breach. *Dennis v. Morgan,* 89 Ohio St.3d 417, 732 N.E.2d 391 (2000). Appellants argue Appellee failed to mitigate any damages by not securing the property on October 8th. Because Appellees failed to give proper notice of their termination of the tenancy, we do not view his failure to secure the premises on the 8th to be problematic. The inference could have been made that Appellants were simply moving furniture or in the process of moving, still intending to timely notify Appellee. At trial, Appellee described Appellants, at least twice, as "good tenants." He may have reasonably expected them to give him notice of termination. Moreover, the delay in securing the premises in *Kelley* was 3 ½ months, not one week, as here. The trial court found Appellee's testimony as to these facts credible and again, Appellants failed to provide by way of testimony or other evidence an alternative version of the events. We find the trial court's judgment that Appellants were in control of the premises and responsible for the damages Appellee discovered, violations of 5321.05(A), to be supported by the evidence.

{¶33} Appellants also argue that Appellee failed to provide proof of the actual costs expended for floor coverings or carpet cleaning. At trial, Appellee testified to an extensive list of damages, including the projected

cost of replacing the floor covering and cleaning the carpets.  He provided photographs of the damage.  The insurance company representative also testified to the extensive damage he saw and noted in his report.   Appellee testified to the damage to electrical and the need for rewiring. Specifically, Appellee testified the attic was sealed-off and insulated before Appellants moved in. When he found the premises abandoned, the wiring had been "messed with" and "short-circuited."   An inference can be made that the damage to the electrical necessitated the need for a new breaker box.   Based upon the record before us, we find the trial court's judgment as to the Appellants' violations of R.C. 5321.05(A) and Appellants' liability for damages to premises was supported by the evidence.

### 3.  Attorney fees

{¶34}  Appellants also contend Appellees are not entitled to an award for attorney fees, arguing that Appellees failed to prove violations pursuant to R.C.5321.05.  As discussed above, R.C. 5321.05(A) sets forth tenant obligations.  In particular, R.C. 5321.05(C)(1) provides as follows:

> If the tenant violates any provision of this section, other than division (A)(9) of this section, the landlord may recover any actual damages that result from the violation together with reasonable attorney's fees.

> In this matter, the trial court found:

"Among the R.C. 5321.05 obligations of tenants are the
following applicable to this case:

(2) Dispose of all rubbish, garbage and other waste in a clean,
safe and sanitary manner.

(6) Personally refrain and forbid any other person who is on
the premises with his permission from intentionally or
negligently destroying, defacing, damaging, or removing any
fixture, appliance, or other part of the premises…."

{¶35}  The trial court went on to find the parties indicated no change,
during the periodic tenancy, from the terms of the two written leases, except
to the amount of monthly rent.  The trial court concluded the following
provisions of the written leases remained in effect:

"(6)  Tenant shall be liable for and shall hold landlord harmless
on account of any theft, loss, or damage to property or injury to
any other person…

(7)  …Tenant agrees to leave the premises thoroughly clean and
in as good as condition as when Tenant first occupied them…"

{¶36}  Finally, the trial court concluded that Appellees were entitled
to reasonable attorney fees for Appellants' violations of R.C. 5321.05,
noting that attorney fees are recoverable only as reasonable and necessary as
to damages and time spent regarding pursuit of rent or defense of
counterclaims was not included.

{¶37}  In its January 26, 2012 journal entry, the trial court awarded
attorney fees and costs at $1,120.00.  The trial court stated:

"Attorney fees are authorized only for R.C.5321.05(C) damages, which the Court previously found to be $3,637.01. Such fees are not authorized for time spent on the collection of rent or in defending against the counterclaim. The itemized billing of Plaintiffs' counsel does not distinguish between these three areas. The Court accepts Attorney Meek's time as accurate and her and her hourly rate [$150.00] as reasonable, but will award fees only related to the recovery of R.C.5321.05 damages."

The Court arrives at its conclusion of appropriate fees by two methods. First, in the absence of contrary evidence, the Court finds that one third of the time was spent on 5321.05 damages. One third of the claimed $2,719.50 in fees would be $906.50. Second, a reasonable contingency fee would be one third of the $3,637.01 awarded, which would be $1,212.33. The average of these two methods yields $1,059.41. The court finds $1.059.41 in fees, plus $60.59 in costs to be reasonably related to R.C.5321.05 damages.

{¶38} We agree with the trial court's find that Appellee proved violations of R.C. 5321.05 damages to premises. As such, an award of attorney fees is authorized under R.C. 5321.05(C). The trial court explained its reasoning and its calculation of damages. Our review demonstrates the trial court's award of attorney fees is supported by the record. [4]

{¶39} For the foregoing reasons, we affirm the trial court's rulings as to the damage awards for past due rent, damage to premises,

---

[4] Plaintiff-Appellee Snyder's brief urges this court to find Appellee Snyder is entitled to attorney fees for frivolous conduct and bad faith in this appellate action under R.C. 2323.51 and Civil Rule 11. We decline to address this new argument raised by Appellee. The proper method for pursuit of attorney fees for frivolous conduct is described in R.C. 2323.51(B)(1).

and attorney fees.  As such, we overrule the second assignment of error.

## ASSIGNMENT OF ERROR III

{¶40}  Lastly, Appellants contend that the trial court abused its discretion in denying a continuance of the bench trial. Appellants argue the denial of their motion for continuance was unreasonable, arbitrary, and unconscionable because when United Ohio Insurance Company was permitted to intervene, Appellants had no time to investigate the insurance company's claims and engage in discovery to prepare for trial.  For the reasons which follow, we disagree.

## A.  STANDARD OF REVIEW

{¶41}  It is well-settled law in Ohio that the granting or denial of a continuance of a matter is entrusted to the sound discretion of the trial court. *State v. Unger,* 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981), syllabus. Appellate courts may not reverse the denial of a continuance unless there has been an abuse of that discretion.  *Id.* at 67, 423 N.E.2d 1078.  An abuse of discretion connotes more than a mere error or judgment; rather, it implies an arbitrary, unreasonable or unconscionable attitude.  *State v. Montgomery,* 61 Ohio St.3d 410, 413, 575 N.E.2d 167 (1991).

{¶42}  "Because there is no bright line test for determining when an abuse of discretion occurs in the context of the denial of a motion for continuance, the Supreme Court has adopted a balancing approach." *In re Shepherd*, 4th Dist. No. 97CA941, 1998 WL 254032, (May 11, 1998). This test requires the trial court to weigh any potential prejudice to the defendant against the court's right to control its docket and the public's interest in the prompt and efficient dispatch of justice. *Unger,* supra at 67, 423 N.E.2d 1078.  Specifically, the *Unger* court stated:

> "In evaluating a motion for a continuance, a court should note, inter alia:  the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstances which gives rise to the request for a continuance; and other relevant facts, depending on the unique facts of each case. "  *Unger,* supra, at 67-68, 423 N.E.2d 1078.

## B.  LEGAL ANALYSIS

{¶43}  To Appellants' argument they had only three weeks remaining prior to trial when United Ohio was added as a plaintiff, Appellee United Ohio counters its intervention did not create an exigent circumstance as to the Waldrons' opportunity to investigate further the claims of damage at the rental premises.   United Ohio points out Appellants were aware at all times the insurance company had conducted its own investigation. We agree,

pointing out in Appellants' memorandum contra to motion to intervene, Appellants state "[o]n or about August 31, 2011, [they] received a demand for subrogation of payment of damages from the attorney on behalf of the insurance company." Further, in its motion to intervene, United Ohio asserts its claim is essentially that of subrogation and intervention was necessary to protect that interest. That the insurance company would assert a claim as to its subrogated interest cannot have been surprising. United Ohio also notes that during the three remaining weeks prior to trial, Appellants did not make any effort to depose the company's investigator or request copies of documentation.

{¶44} Furthermore, our review of the transcript reveals the substance of the insurance company representative's testimony was to establish that United Ohio had paid $2,108.51 to Appellee and had a subrogated interest. The insurance representative's testimony as to the damage he saw, the report he prepared, and the photographs introduced as exhibits echoed Appellee's testimony regarding his observations. Appellants' brief does not point to any testimony or other evidence which was unfairly surprising or prejudicial to them. As such, we find the trial court properly considered any potential prejudice to the Appellants against its own right to control its docket and the public's interest in the prompt and efficient dispatch of justice.

**{¶45}** In this matter, we find the trial court's decision to deny

Appellants' continuance was not an abuse of discretion.  Therefore, we

affirm the trial court's decision and also overrule this assignment of error.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellees recover of Appellants costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Municipal Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Harsha, J. & Abele, J.:  Concur in Judgment and Opinion.


For the Court,

BY:  _____
          Matthew W. McFarland
          Presiding Judge


## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**