[Cite as *Fultz v. Fultz*, 2014-Ohio-3344.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY


BARBARA FULTZ, EXECUTOR OF
 THE ESTATE OF DARWIN FULTZ,          :

         Plaintiff-Appellee,          :         Case No.   13CA9

         vs.                          :

RANDALL E. FULTZ,                     :         DECISION AND JUDGMENT ENTRY

         Defendant-Appellant.         :
_____

                          APPEARANCES:

COUNSEL FOR APPELLANT:     Sherrille D. Akin and Julia R. Baxter, Two Miranova Place,
                           Suite 700, Columbus, Ohio 43215

COUNSEL FOR APPELLEE:      Robert J. Judkins, 303 West Jefferson Street, P.O. Box 33,
                           Greenfield, Ohio 45123
_____

CIVIL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED: 7-25-14
ABELE, P.J.

{¶ 1}   This is an appeal from a Pickaway County Common Pleas Court judgment that set

aside a deed and awarded Barbara Fultz, executor of the Estate of Darwin Fultz, plaintiff below

and appellee herein, $9,400 in compensatory damages and $16,479.29 in attorney fees.   Randall

E. Fultz, defendant below and appellant assigns the following errors for review:

         FIRST ASSIGNMENT OF ERROR:

         "THE TRIAL COURT ERRED AND ABUSED ITS
         DISCRETION IN REFUSING TO GRANT APPELLANT'S
         TIMELY FILED MOTION TO CONTINUE FOR THE PURPOSE
         OF OBTAINING NEW LEGAL COUNSEL WHERE THE
         MOTION WAS FILED PROMPTLY UPON THE

WITHDRAWAL OF APPELLANT'S COUNSEL, APPELLANT WAS PREJUDICED BY THE DENIAL, AND THE CONTINUANCE WOULD NOT HAVE INCONVENIENCED OR PREJUDICED ANY PARTY, COUNSEL OR THE COURT."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN FAILING TO IMPANEL A JURY BECAUSE APPELLANT'S JURY INSTRUCTIONS DID NOT COMPLY WITH THE CIVIL RULES WHERE APPELLANT HAD PROPERLY REQUESTED A JURY, WAS PROCEEDING PRO SE DUE TO THE DENIAL OF HIS MOTION TO CONTINUE AND HAD NO NOTICE OF THE CONSEQUENCES OF HIS NON-CONFORMING JURY INSTRUCTIONS, AND WHERE THE OPPOSING PARTY HAD FILED PROPERTY [SIC] JURY INSTRUCTIONS."

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED AND RULED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN FINDING THAT APPELLANT COMMITTED FRAUD BECAUSE THERE WERE INSUFFICIENT FINDINGS OF FACT TO SUPPORT SUCH A CONCLUSION."

FOURTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED WHEN IT ORDERED APPELLANT TO PAY ATTORNEY FEES BECAUSE NO PUNITIVE DAMAGES WERE AWARDED IN THIS CASE."

{¶ 2} In March 2011, Darwin Fultz was nearing death and living at a nursing home. According to his wife, Darwin was paralyzed and completely dependent upon others to care for him.

{¶ 3} Around March 21, 2011, appellant presented a quit claim deed that he claimed Darwin had signed to a notary. The notary notarized the deed, although she had not seen Darwin sign it.

{¶ 4} On March 25, 2011, appellant filed the quit claim deed in the Pickaway County recorder's Office. Four days later, Darwin died.

{¶ 5} On August 2, 2011, appellee filed a complaint against appellant and (1) requested the trial court to set aside the deed, and (2) asserted a claim for fraud. Appellee sought compensatory and punitive damages and attorney fees.

{¶ 6} On January 2, 2013, appellant's counsel filed a notice of withdrawal of counsel. In it, appellant's counsel stated:

> "Counsel have advised [appellant] of his options regarding settlement and trial in this matter. Opposing counsel made discovery requests which needed to be answered by December 8, 2012. Counsel contacted [appellant] December 1, 2012 and asked him to come in to counsel's office by December 5, 2012 to make such responses. [Appellant] did not come in to the office and Counsel have not heard from [appellant] since the December 1, 2012 telephone call. Counsel have advised [appellant] in writing that they are withdrawing and that [appellant] will have to find other representation herein."

{¶ 7} Appellant's counsel also attached a letter dated December 31, 2012 that they sent to appellant. That letter specifically advised appellant that he would need "to proceed without counsel or find other counsel to represent you."

{¶ 8} On January 23, 2013, the trial court scheduled the trial for March 18, 2013.

{¶ 9} On February 7, 2013, appellant filed a motion to continue the trial to allow additional time to obtain counsel. Appellant stated that he "need[ed] additional time to secure the services of an attorney to represent me in this case." Appellant's motion, however, did not indicate what efforts he had made to secure new counsel since prior counsel's withdrawal.

{¶ 10} On February 8, 2013, the trial court denied appellant's motion to continue the trial.

{¶ 11} On March 11, 2013, appellant filed a document that bore the caption "Jury Instructions." Appellant's document further contained a "Notice of Self-Representation." Appellant's purported "Jury Instructions" did not, however, contain any actual jury instructions. Instead, the document presented a "factual background," "claims and defenses," "defendants [sic] counterclaim," "counterclaim measures," and "verification."

{¶ 12} Before the trial began, the trial court noted that it did not summon a jury because appellant's purported jury instructions stated "notice of self representation." The court indicated that it would try the matter and asked appellant if he understood. Appellant responded:

> "Yes, your honor. And that's—this morning I had mentioned that I wanted to waive that right for a jury trial and to have just a judge trial, seeing that I lost my counsel and did not get any representation in such short notice. I did try to seek out representation, but I would have needed a further continuance in order for anyone to be interested in the case. So, therefore, I'm held to the Court to just show up, and I am here today with whatever representation I do have."

{¶ 13} At the trial, multiple witnesses, including Darwin's caretakers, stated that Darwin could not have been able to sign his name to the quit claim deed. They explained that Darwin lacked the ability to hold a pen and could not even hold eating utensils or a television remote control.

{¶ 14} Appellant testified that he brought the deed to Darwin around March 20 or 21, 2011, and that Darwin signed the deed. He admitted that he took the deed to a notary who notarized the deed without witnessing Darwin sign it.

{¶ 15} On April 4, 2013, the trial court entered a decision and found that Darwin "never acknowledged his signature before any notary public or other official * * * for the deed [appellant] caused to be filed with the Pickaway County Recorder on March 21, 2011." The

court found that the deed is not valid and that the real estate must pass through Darwin's estate. The court determined that appellee established that Darwin "lacked the capacity to execute the document on March 21, 2011 and that [appellant] either executed or attempted to execute undue influence." The court further determined that appellant's conduct was fraudulent in that he knowingly caused "an invalid deed to be recorded to obtain sole ownership of the land for himself."

{¶ 16} In the trial court's April 11, 2013 judgment, the court stated that "[b]oth parties on the record waived their right to Trial by jury and consented to Trial by Court." The court also entered the following findings: (1) the deed recorded on March 25, 2011 is not valid; (2) appellant "either executed or attempted to execute undue influence upon Darwin Fultz"; (3) appellant's conduct "was fraudulent by knowingly causing an invalid deed to be recorded in an attempt to obtain sole ownership of land for himself." The court declared the deed void, set it aside and awarded appellee $9,400 in compensatory damages and $16,479.29 in attorney fees. This appeal followed.

I

{¶ 17} In his first assignment of error, appellant asserts that the trial court's denial of his motion to continue constitutes an abuse of discretion. Appellant argues that the court failed to consider the six factors outlined in State v. Unger, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981).

{¶ 18} The decision regarding a motion to continue is left to the "broad, sound discretion" of the trial court. Unger, syllabus; Snyder v. Waldron, 4th Dist. Athens No. 12CA9, 2013-Ohio-3416, ¶41; State v. Dickess, 4th Dist. Scioto No. 09CA3272, 2009-Ohio-4541, ¶9.

Consequently, absent an abuse of discretion, a reviewing court will not disturb a trial court's

decision. "'The term "abuse of discretion" connotes more than an error of law or judgment; it

implies that the court's attitude is unreasonable, unconscionable, or arbitrary.'"   Blakemore v.

Blakemore, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983), quoting State v. Adams, 62 Ohio St.2d

151, 157, 404 N.E.2d 144 (1980).   In order to find an abuse of discretion, "'the result must be so

palpably and grossly violative of fact and logic that it evidences not the exercise of will but the

perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of

reason but instead passion or bias.'"   Vaught v. Cleveland Clinic Found., 98 Ohio St.3d 485,

2003-Ohio-2181, 787 N.E.2d 631, ¶13, quoting Nakoff v. Fairview Gen. Hosp., 75 Ohio St.3d

254, 256, 662 N.E.2d 1 (1996); accord Freshwater v. Mt. Vernon City School Dist. Bd. of Edn.,

137 Ohio St.3d 469, 2013-Ohio-5000, 1 N.E.3d 335, ¶77; Pons v. Ohio State Med. Bd., 66 Ohio

St.3d 619, 621, 614 N.E.2d 748 (1993) ("The appellate court is to determine only if the trial court

has abused its discretion, i.e., being not merely an error of judgment, but perversity of will,

passion, prejudice, partiality, or moral delinquency.").   Furthermore, when applying the abuse of

discretion standard, a reviewing court may not substitute its judgment for that of the trial court.

E.g., Savage v. Correlated Health Serv., Ltd., 64 Ohio St.3d 42, 55, 591 N.E.2d 1216 (1992);

Freshwater at ¶77, quoting Graziano, 32 Ohio St.3d at 294, 513 N.E.2d 282 ("'Absent an abuse

of discretion on the part of the trial court, the court of appeals may not engage in what amounts to

a substitution of judgment of the trial court.'").

{¶ 19}  "'There are no mechanical tests for deciding when a denial of a continuance is so

arbitrary as to violate due process.   The answer must be found in the circumstances present in

every case, particularly in the reasons presented to the trial judge at the time the request is

denied.'"   Unger, 67 Ohio St.2d at 67, quoting Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct.

841, 11 L.Ed.2d 921 (1964); accord Snyder at ¶42.   The Ohio Supreme Court   has adopted a

balancing approach that recognizes "all the competing considerations" to determine whether a

trial court's denial of a motion to continue constitutes an abuse of discretion.[1]   Unger, 67 Ohio

St.2d at 67.   In exercising its discretion, a trial court should "[w]eigh[] against any potential

prejudice to a defendant * * * concerns such as a court's right to control its own docket against

the public's interest in the prompt and efficient dispatch of justice."   Id.   A court should also

consider: (1) the length of the delay requested; (2) whether other continuances have been

requested and received; (3) the inconvenience to litigants, witnesses, opposing counsel and the

court; (4) whether the requested delay is for legitimate reasons or whether it is dilatory,

purposeful, or contrived; (5) whether the defendant contributed to the circumstance which gives

rise to the request for a continuance; and (6) other relevant factors, depending on the unique

circumstances of the case.   Id.; State v. Conway, 108 Ohio St.3d 214, 2006-Ohio-791, 842

N.E.2d 996, ¶147.

{¶ 20}  In the case sub judice, we initially observe that appellant suggests that the trial

court failed to use the Unger analysis when it evaluated his motion to continue.   Even though the

trial court's decision to deny appellant's motion does not outline its analysis of the Unger factors,

---

[1] Although Unger was a criminal case, Ohio appellate courts routinely apply the analysis to trial court continuance decisions in civil cases. E.g., Frodyma v. Frodyma, 2nd Dist. Greene No. 2013-CA-40, 2014-Ohio-953, ¶¶26-27; Jacobs v. Jones, 10th Dist. Franklin No. 10AP-930, 2010-Ohio-3313, ¶¶16-17; Snyder, supra, at ¶¶41-42. Moreover, the Ohio Supreme Court has applied it in a civil case involving an appeal from the Ohio Power Sitting Board. In re Application of Am. Transm. Sys., Inc., 125 Ohio St.3d 333, 2010-Ohio-1841, 928 N.E.2d 427, ¶32.

we have recognized that nothing requires trial courts to specifically articulate an analysis of each Unger factor. Dickens, supra, at ¶13. Thus, to the extent appellant contends that the trial court erred by failing to outline the Unger factors, we reject the contention.

{¶ 21} Appellant further asserts that had the trial court properly considered the Unger factors, it would have found that they weighed in favor of granting a continuance. Appellant observes that he did not specify the length of delay requested, but argues that the trial court could have granted a "reasonable continuance" and his failure to specify the amount of time requested "is not fatal to his request." Appellant also asserts that he requested a continuance for a legitimate reason—to obtain new counsel—and not for a dilatory purpose. Appellant argues that the case had been continued only one other time in order to allow the parties to mediate the matter.

{¶ 22} Appellant further contends that the record does not contain any evidence to suggest that a continuance would have inconvenienced anyone. He points out that he filed his motion to continue shortly after the court set the trial date, and before appellee subpoenaed any witnesses. Appellant asserts that because an adverse outcome would deprive him of property ownership, the court should have determined that the potential adverse outcome to appellant trumped any minor inconvenience resulting from a continuance.

{¶ 23} Appellant also argues that he cannot be deemed to have contributed to the circumstance leading to his request for a continuance simply because he failed to cooperate with his counsel, which then led counsel to withdraw. Appellant then argues that the trial court's denial of his motion to continue "demonstrably prejudice[d]" him. Appellant asserts:

"He was unprepared and failed to provide key evidence to opposing counsel prior to the hearing, which resulting in the trial court denying him the ability to present evidence at trial. He failed to object to a considerable amount of hearsay evidence, and was unable to respond to opposing counsel's regular objections to his questioning or testimony. Appellant was sometimes confused by the process; he did not respond to objections, even when prompted to do so by the trial judge."

{¶ 24} Appellant bases much of his argument upon Swanson v. Swanson, 8th Dist. Cuyahoga No. 90472, 2008-Ohio-4865. In Swanson, a mother appealed the trial court's judgment that designated the father the residential parent of the parties' child. Twenty days before trial, the mother's counsel filed a motion to withdraw, asserting that the mother had fired him. Twelve days before trial, the court permitted the mother's counsel to withdraw. Six days before trial, the mother filed a motion to continue because she was unable to obtain substitute counsel. The mother stated in her motion to continue that "she had made numerous attempts to hire counsel but her phone calls were not returned." Id. at ¶6. The trial court denied her motion "and forced the mother to proceed pro se." Id. The mother appealed and asserted that the trial court abused its discretion by denying her motion to continue.

{¶ 25} The appellate court agreed with the mother that the trial court abused its discretion and found that "numerous factors weighed in favor of granting a short continuance to allow the mother to obtain new counsel." Id. at ¶15. The court first observed that the case had been pending for approximately eight months, the court had set the trial only three months before the mother requested her continuance, and the mother had not requested a prior continuance. The court concluded that "any urgency in adjudicating the [case] stemmed more from the trial court's scheduling methods." Id. The court noted that "the mother requested the continuance solely to obtain new counsel" and not "to delay the proceedings." Id. at ¶16. Additionally, the court

determined that a short continuance would not have inconvenienced the parties, except for rescheduling. The court further emphasized "the nature of the proceedings and the ramifications of an adverse outcome, i.e., losing designation as the residential and custodial parent." Id. at ¶17. Consequently, the court found that permitting the mother to have counsel represent her at a hearing concerning parental rights "trump[ed] any minor inconvenience associated with a short delay." Id.

{¶ 26} The Swanson court further recognized that "the mother's conduct of firing her attorney contributed to the need for the continuance," but stated that "this alone does not warrant the denial of her motion." Id. at ¶18. The court thus determined that "the Unger factors weighed strongly toward granting the mother's motion for a continuance." Id. at ¶19. The court also considered other factors. The court observed that allowing the mother to have counsel represent her better served the child's best interest "by ensuring the integrity of the proceedings." Id. at ¶20. The court additionally found that the mother suffered prejudice as a result of proceeding pro se. The court further noted that the mother filed her motion "within days from the court's order allowing her previous attorney to withdraw." Id. at ¶24.

{¶ 27} While Swanson bears some similarities to the case at bar, we believe that other factors in the case sub judice distinguish it and lead us to conclude that the trial court's denial of appellant's motion to continue does not constitute an abuse of discretion. First, unlike Swanson where the mother had approximately twenty days to locate substitute counsel, in the case at bar appellant knew on January 2, 2013, the date his attorneys filed their notice of withdrawal, that he would need to find substitute counsel. Thus, appellant had two and one-half months between

counsel's withdrawal and the trial date to obtain new counsel.   When appellant filed his February 7, 2013 motion to continue—over one month after counsel's notice of withdrawal—he also offered no explanation as to what efforts he had made up to that point to secure new counsel.   Appellant offered no explanation why he was unable to secure new counsel between January 2, 2013 and February 7, 2013, when he filed his motion to continue.   Appellant also does not explain why he was unable to secure new counsel between February 8, 2013 and March 18, 2013–the trial date.   The trial court could rationally determine that appellant's failure to seek substitute counsel in a timely manner is a primary reason appellant sought a continuance and that he could have obtained substitute counsel between the time the court denied his motion to continue—February 8, 2013—and the trial date—March 18, 2013.   Other Ohio courts have concluded that a trial court does not abuse its discretion by denying a motion to continue when a party fails to seek new counsel in a timely manner.   Graham v. Audio Clinic, 3rd Dist. Hancock No. 5-04-35, 2005-Ohio-1088, ¶27 (determining that trial court did not abuse its discretion by overruling motion to continue when appellant had one month to obtain substitute counsel but failed to do so); Swedlow v. Riegler, 9th Dist. Summit No. 26710, 2013-Ohio-5562, ¶11 (determining trial court did not abuse its discretion by denying motion to continue when appellant offered no evidence that he attempted to "secure the services of alternate counsel"); Henderson v. Henderson, 11th Dist. Geauga No. 2012-G-3118, 2013-Ohio-2820, ¶45 (concluding trial court did not abuse its discretion by denying appellant's motion to continue when appellant had over one month to obtain new counsel before hearing in divorce action).

{¶ 28}  In the case sub judice, appellant had more than two and one-half months between counsel's withdrawal and the trial date to locate substitute counsel.   He offers no evidence that

he sought substitute counsel in the interim or made any effort to do so.   Before the trial began, appellant claimed that he was unable to find counsel who would take the case unless the court granted a continuance.   Appellant did not, however, reveal when he had attempted to obtain substitute counsel.   To the extent appellant implies that he was unable to find counsel who could have prepared for trial within the five weeks between the court's denial of his motion to continue and the trial date, appellant fails to recognize that he could have sought new counsel as early as January 2, 2013, and did not need to wait file a motion to continue before seeking new counsel. If appellant had retained new counsel in early January, then counsel would have had two and one-half months to prepare.   This length of time has even been deemed sufficient preparation in capital cases.   State v. Bryan, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶64, citing State v. Beuke, 38 Ohio St.3d 29, 37, 526 N.E.2d 274 (1988) (two and one-half months' trial preparation); State v. Benner, 40 Ohio St.3d 301, 303, 533 N.E.2d 701 (1988) (two and one-half months' trial preparation).   Thus, it appears to be a reasonably sufficient time to prepare for a typical civil trial.

{¶ 29}  Additionally, in Swanson, the case had been pending for a mere eight months when the mother sought a continuance.   Here, appellee filed her complaint in August 2011. Thus, when appellant filed his motion to continue, the case had been pending for over seventeen months—twice as long as Swanson.   The trial court could have reasonably and rationally determined that the public's, and indeed the appellee's, right to the efficient and prompt dispatch of justice outweighed any potential prejudice to appellant, especially when appellant had over one month after the court denied his motion to continue to obtain substitute counsel.

{¶ 30} Moreover, in Swanson the court determined that the mother sought a continuance for the legitimate reason of obtaining new counsel, not for a dilatory purpose. In the case at bar, the trial court could have rationally determined, based upon all of the circumstances present, that appellant acted in a dilatory manner by failing to timely respond to counsel's requests, which led to counsel's withdrawal, and by failing to seek substitute counsel in a timely manner. Swanson appeared to involve a simple act of a mother firing her attorney and then being in need of substitute counsel. The mother asserted that she had contacted potential substitute counsel, but her calls were not returned. By contrast, in the case sub judice appellant did not fire his attorneys. Instead, appellant's counsel withdrew due to appellant's lack of cooperation. And we reiterate: appellant had plenty of notice that he needed to obtain substitute counsel even before the trial court set the trial date. He offers no rational reason why he was unable to do so either before or after the court set the trial date.

{¶ 31} Although in the case at bar, any inconvenience to the parties, the court, and any witnesses may have arguably been minimal, the other factors discussed herein weigh against a continuance. Likewise, even though appellant did not specify the length of the continuance required to secure new counsel, we do not find that this factor weighs heavily against him. We observe, however, that appellant did not explain how much additional time he needed to secure new counsel or why the time he already had was inadequate.

{¶ 32} In the case sub judice, appellant's conduct contributed to the circumstances that necessitated his motion for a continuance. While the Swanson court did not believe that the mother's termination of her counsel weighed against granting the mother a continuance, in the case at bar we believe that appellant's uncooperative attitude with his counsel and his failure to

timely seek substitute counsel were major contributing factors to his request for a continuance. Appellant did more than terminate his counsel.   In fact, counsel withdrew due to appellant's lack of cooperation.   Additionally, appellant offered no evidence that he timely sought substitute counsel once he learned of counsel's withdrawal.   Thus, these facts distinguish the case sub judice from Swanson.   Consequently, based upon a consideration of all competing concerns, we do not believe that the trial court acted unreasonably, arbitrarily, or unconscionably by denying appellant's motion to continue.

{¶ 33} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's first assignment of error.

II

{¶ 34} In his second assignment of error, appellant argues that the trial court deprived him of his right to a jury trial.   Appellant contends that the court wrongly refused to summon a jury simply because appellant failed to file proper jury instructions.   Appellee, however, contends that appellant simply waived his right to a jury trial.

{¶ 35} Appellant counters that even though the transcript reveals that he verbally agreed to a bench trial, his agreement was not voluntary.   Appellant claims that he did not voluntarily waive his right to a jury when that was his "only" option.   Appellant claims that the trial court left him without any options by failing to summon a jury and by failing to continue the trial to allow appellant to obtain substitute counsel.   Appellant, in essence, asserts that the trial court forced him to proceed pro se and without a jury.

{¶ 36} "The right of trial by jury shall be inviolate."   Ohio Constitution, Article I, Section 5; Civ.R. 38(A).   However, "the right to a jury trial may be waived. ""Section 5 of

Article I of the Ohio Constitution does not prevent a court from giving effect to a waiver of a jury

trial by a party who has a right to a jury trial.'""" State ex rel. Russo v. McDonnell, 110 Ohio

St.3d 144, 2006-Ohio-3459, 852 N.E.2d 145, ¶53, quoting Shimko v. Lobe, 103 Ohio St.3d 59,

2004-Ohio-4202, 813 N.E.2d 669, ¶29, quoting Cassidy v. Glossip, 12 Ohio St.2d 17, 41 O.O.2d

153, 231 N.E.2d 64 (1967), paragraph one of the syllabus.

{¶ 37} "Civ.R. 38(D) states that once a party has demanded a jury trial, the demand

cannot be withdrawn without the consent of the parties." Soler v. Evans, St. Clair & Kelsey, 94

Ohio St.3d 432, 438, 763 N.E.2d 1169 (2002). Additionally, Civ.R. 39(A) sets forth the

"general methods" by which a party may waive a properly-demanded jury trial. Id. The rule

states:

> The trial of all issues so demanded shall be by jury, unless (1) the parties
> or their attorneys of record, by written stipulation filed with the court or by an oral
> stipulation made in open court and entered in the record, consent to trial by the
> court sitting without a jury or (2) the court upon motion or of its own initiative
> finds that a right of trial by jury of some or all of those issues does not exist. The
> failure of a party or his attorney of record either to answer or appear for trial
> constitutes a waiver of trial by jury by such party and authorizes submission of all
> issues to the court.

{¶ 38} In Soler, the court determined that the dismissal of a complaint containing a

general jury demand does not waive the right to a jury trial on "issues raised in a compulsory

counterclaim." Id. at paragraph two of the syllabus. The court observed that Civ.R. 39(A) does

not specify the dismissal of a complaint as a means of waiving a jury demand.

{¶ 39} In the sub judice, the trial court did not summon a jury due to appellant's

non-conforming jury instructions. The trial court apparently determined that appellant's

non-conforming jury instructions waived his jury demand. However, the Soler court stated that

Civ.R. 39(A) outlines the ways to waive a jury once properly demanded.   Just as the dismissal of a complaint containing a jury demand is not one of the methods specified as one of the methods to waive a jury trial, filing non-conforming jury instructions is also not one of those methods. The rule does not authorize a trial court to construe non-conforming jury instructions as a waiver of a party's properly filed jury demand.   Furthermore, appellee has not cited any authority that appears to approve of the trial court's conduct.   Thus, we believe that the trial court erred by construing appellant's non-conforming jury instructions as a waiver of jury.

{¶ 40}  However, after our review of the record, we believe that the trial court's error was cured when appellant orally waived his right to a jury trial in accordance with Civ.R. 39(A). Appellant stated in open court that he "wanted to waive [his] right for a jury trial and to have just a judge trial," because he did not have counsel and would need a continuance in order to find new counsel.   Appellant stated:   "I'm held to the Court to just show up, and I am here today with whatever representation I do have."   While appellant may not have been entirely pleased with the circumstances, he nevertheless orally stated that he waived his right to a jury trial and fully participated in the bench trial.   Appellant did not clearly object to the proceeding in the absence of a jury.   Instead, he stated that he "wanted to waive [his] right for a jury trial."

{¶ 41}  Additionally, appellant did not object once the trial court decided to proceed without a jury.   The Ohio Supreme Court has stated that "'[a] party may waive his right to a jury trial by acts, as well as by words.'"   State ex rel. Russo v. McDonnell, supra, ¶53, quoting Bonewitz v. Bonewitz, 50 Ohio St. 373, 34 N.E. 332 (1893), paragraph one of the syllabus. Furthermore, this court previously held that "a party may not stand idly by while the court

conducts a bench trial and then complain on appeal that the court should have held a jury trial."

Goddard v. Goddard, 192 Ohio App.3d 718, 2011-Ohio-680, 950 N.E.2d 567, ¶19 (4th Dist.);

accord Abbe Family Found. & Trust v. Portage Cty. Sheriff, 11th Dist. Portage No.

2005–P–0060, 2006-Ohio-2497, ¶47 ("A party may waive his or her right to a jury trial, even

after filing a jury demand, by participating in a trial before the court without objecting to the lack

of a jury."); Toma v. Toma, 8th Dist. Cuyahoga No. 82118, 2003-Ohio-4344; Cavanaugh Bldg.

Corp. v. Liberty Elec. Co., Summit App. No. 19146 (Apr. 28, 1999); Foremost Ins. Co. v.

Gimbel Agency, Inc., 11th Dist. Portage No. 96–P–0203 (Aug. 29, 1997); Nenadal v.

Landerwood Co., Cuyahoga App. No. 65428 (May 12, 1994), quoting Royal American

Managers, Inc. v. IRC Holding Corp., 885 F.2d 1011, 1018 (C.A.2, 1989) (explaining that it

"would be 'patently unfair' and, 'in effect, [an] "ambush [of the] trial judge" on appeal' if

appellant were allowed 'to lodge an early demand for a jury,' participate in a bench trial without

objection, and then assign as error the failure to honor the jury demand"); Henning v. Steiner, 9th

Dist. Wayne No. 2725 (Oct. 7, 1992).   But see Carl Sectional Home, Inc. v. Key Corp., 1 Ohio

App.3d 101, 1 OBR 403, 439 N.E.2d 915 (1981) (holding that a properly demanded jury trial

cannot be waived by silence).

{¶ 42} In the case at bar, appellant participated, without objection, in a bench trial and

never once complained about the lack of a jury.   In fact, he stated that he waived his right to a

jury trial.   Appellant could have objected, but did not.   Therefore, he is estopped from arguing

on appeal that the trial court should have held a jury trial.   Goddard at ¶22.

{¶ 43} Appellant argues that under our holding in State v. Tackett, 4th Dist. Jackson No.

04CA12, 2005-Ohio-1437, we must determine that the trial court committed reversible error by

denying appellant a jury trial.   Tackett, however, is readily distinguishable.   Tackett is a

criminal matter.   Specific criminal rules govern the right to a jury trial in a criminal matter and

how that right may be waived.   E.g., Crim.R. 23; R.C. 2945.05; State v. Bays, 87 Ohio St.3d 15,

716 N.E.2d 1126 (1999).   The Ohio Supreme Court has not incorporated those same

requirements into the rules governing jury trial waivers in civil trials.

{¶ 44} Moreover, we do not agree with appellant that his status as a pro se defendant

during the trial court proceedings required the trial court to be lenient.   Appellant correctly notes

that this court has "a policy of affording considerable leniency to pro se litigants."   Cooke v.

Bowen, 4th Dist. Scioto No. 12CA3497, 2013-Ohio-4771, ¶7.   We have applied this leniency

policy, however, to pro se appellants, and not necessarily to parties appearing pro se during trial

court proceedings.   E.g., In re Estate of Pallay, 4th Dist. Washington No. 05CA45,

2006–Ohio–3528, ¶10; Robb v. Smallwood, 165 Ohio App.3d 385, 2005–Ohio–5863, 846

N.E.2d 878, ¶5 (4th Dist.).   Moreover, the Ohio Supreme Court has stated that "pro se litigants *

* * must follow the same procedures as litigants represented by counsel."   State ex rel. Gessner

v. Vore, 123 Ohio St.3d 96, 2009-Ohio-4150, 914 N.E.2d 376, ¶5.   As we explained in St.

Joseph's Hosp. v. Hoyt, 4th Dist. Washington No. 04CA20, 2005-Ohio-480, ¶27:

> "[T]he pro se litigant is to be treated the same as one trained in the law as far as
> the requirement to follow procedural law and the adherence to court rules.   If the
> courts treat pro se litigants differently, the court begins to depart from its duty of
> impartiality and prejudices the handling of the case as it relates to other litigants
> represented by counsel."

Id., quoting Justice v. Lutheran Social Servs., Franklin App. No. 92AP-1153 (Apr. 8, 1993).

Consequently, although the trial court erred by determining that appellant's non-conforming jury

instructions constituted a waiver of his jury demand, the court's error was cured when appellant waived his right to a jury trial in accordance with Civ.R. 39(A).

{¶ 45} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's second assignment of error.

## III

{¶ 46} In his third assignment of error, appellant argues that the trial court's finding that appellant committed fraud is against the manifest weight of the evidence. Appellant contends that the facts do not support a finding that he recorded an invalid deed with knowledge of its falsity, or with the intent of misleading another. Appellant further asserts that the trial court failed to set forth the factual findings to support its conclusion that appellant committed fraud.

{¶ 47} Appellee counters that appellant's failure to request Civ.R. 52 findings of fact and conclusions of law forfeits the right to argue that the trial court erred by failing to set forth specific factual findings regarding its fraud finding.

{¶ 48} Appellant agrees that "[n]ormally," his failure to request Civ.R. 52 factual findings and conclusions of law means that "this Court should automatically affirm the trial court's finding of fraud." He contends, however, that this rule does not apply because he acted "pro se and did not know the civil rules of procedure."

{¶ 49} Civ.R. 52 provides:

> When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise * * * in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law.

The purpose of Civ.R. 52 findings of fact and conclusions of law is "'to aid the appellate court in reviewing the record and determining the validity of the basis of the trial court's judgment.'" In re Adoption of Gibson, 23 Ohio St.3d 170, 172, 492 N.E.2d 146 (1986), quoting Werden v. Crawford, 70 Ohio St.2d 122, 124, 435 N.E.2d 424 (1982). Thus, a party may file a Civ.R. 52 request in order "to ensure the fullest possible review" Cherry v. Cherry, 66 Ohio St.3d 348, 356, 421 N.E.2d 1293 (1981).

{¶ 50} When a party has not requested Civ.R. 52 findings of fact and conclusions of law, appellate review is limited. Pettet v. Pettet, 55 Ohio App.3d 128, 130, 562 N.E.2d 929 (1988); Yocum v. Means, Darke App. No. 1576, 2002-Ohio-3803, 2002 WL 1729892, ¶7 ("The lack of findings obviously circumscribes our review"). When a party fails to request findings of fact and conclusions of law, we ordinarily presume the regularity of the trial court proceedings. E.g., Bugg v. Fancher, Highland App. No. 06CA12, 2007-Ohio-2019, ¶10. This means that "the reviewing court must presume that the trial court applied the law correctly and must affirm if there is some evidence to support the judgment." Ratliff v. Ohio Dept. of Rehab. & Corr., 133 Ohio App.3d 304, 311-312, 727 N.E.2d 960 (10th Dist. 1999). "It is difficult, if not impossible, to determine the basis of the trial court's ruling without findings of fact and conclusions of law * * *." Leikin Oldsmobile, Inc. v. Spofford Auto Sales, 11th Dist. Lake No. 2000-L-202, 2002-Ohio-2441, ¶17. Thus, in the absence of a request for findings of fact and conclusions of law "[w]e must presume that the trial court heard the evidence" and that the trial court used the proper legal standard when evaluating the evidence. Id. As the court explained in Pettet v. Pettet (1988), 55 Ohio App.3d 128, 130, 562 N.E.2d 929:

"[W]hen separate facts are not requested by counsel and/or supplied by the court the challenger is not entitled to be elevated to a position superior to that he would have enjoyed had he made his request.   Thus, if from an examination of the record as a whole in the trial court there is some evidence from which the court could have reached the ultimate conclusions of fact which are consistent with [its] judgment the appellate court is bound to affirm on the weight and sufficiency of the evidence.

The message is clear: If a party wishes to challenge the * * * judgment as being against the manifest weight of the evidence he had best secure separate findings of fact and conclusions of law.   Otherwise his already 'uphill' burden of demonstrating error becomes an almost insurmountable 'mountain.'"

Accord Bugg; McCarty v. Hayner, 4th Dist. Jackson No. 08CA8, 2009-Ohio-4540, fn. 1.

{¶ 51} Generally, the failure to request findings of fact and conclusions of law ordinarily forfeits the right to challenge the trial court's lack of an explicit finding concerning an issue. Pawlus v. Bartrug, 109 Ohio App.3d 796, 801, 673 N.E.2d 188 (9th Dist. 1996); Wangugi v. Wangugi, 4th Dist. Ross No. 2531 (Apr. 12, 2000).   Furthermore, a party fails to request findings of fact and conclusions of law, he or she cannot complain on appeal as to a lack of specificity of such findings.   Schmidt v. Worthington, 5th Dist. Perry No. 11CA1, 2011-Ohio-4088, ¶12.

{¶ 52} In the instant case, appellant does not dispute the foregoing principles and does not dispute that he failed to file a Civ.R. 52 request for findings of fact and conclusions of law. He contends, however, that we should excuse his failure due to his pro se status.   We disagree. As we stated, supra, a pro se defendant is expected to follow the same procedures as parties represented by counsel.   State ex rel. Gessner v. Vore, supra, at ¶5; St. Joseph's Hosp., supra, at ¶27.

{¶ 53} Moreover, we do not agree with appellant that our holding in In re Kister, 194 Ohio App.3d 270, 2011-Ohio-2678, 955 N.E.2d 1029 (4th Dist.), mandates a different result.   In Kister, we reviewed an assignment of error using the plain error doctrine when the pro se party

failed to object to a magistrate's decision in accordance with Civ.R. 53. We observed that Civ.R. 53(D)(3)(b)(iv) expressly states that a party waives all but plain error by failing to properly object to a magistrate's decision. We did not apply the plain error doctrine due to the appellant's pro se status. Instead, this is the same rule that we would have applied even had counsel represented the appellant. See Babcock v. Welcome, 4th Dist. Ross No. 11CA3273, 2012-Ohio-5284, ¶9 (applying Civ.R. 40(D)(3)(b)(iv)—the nearly identical provision contained in the juvenile rules); Murphy v. Murphy, 4th Dist. Lawrence No. 09CA28, 2010-Ohio-5037, ¶21. Thus, appellant's pro se status does not require that we review his challenges to the trial court's lack of specific factual findings. Instead, we will presume the regularity of the trial court proceedings and affirm if some evidence supports its judgment. Again, without specific factual findings or legal conclusions, our review of appellant's assignment of error is limited.

{¶ 54} Appellate courts generally will uphold trial court judgments so long as the manifest weight of the evidence supports it. When an appellate court reviews whether a trial court's decision is against the manifest weight of the evidence, the court ""''weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [fact-finder] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed * * *.""'' Eastley v. Volkman, 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, ¶20 (clarifying that the same manifest-weight standard applies in civil and criminal cases), quoting Tewarson v. Simon, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist. 2001); State v. Thompkins, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A reviewing court may find a trial court's decision against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs

heavily against the [decision].'"    Thompkins, 78 Ohio St.3d at 387, quoting Martin, 20 Ohio

App.3d at 175; accord State v. Lindsey, 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

Moreover, when reviewing evidence under the manifest weight of the evidence standard, an

appellate court generally must defer to the fact-finder's credibility determinations.    Eastley at

¶21.    As the Eastley court explained:

> "'[I]n determining whether the judgment below is manifestly against the weight of
> the evidence, every reasonable intendment must be made in favor of the judgment
> and the finding of facts. * * *
> If the evidence is susceptible of more than one construction, the reviewing court is
> bound to give it that interpretation which is consistent with the verdict and
> judgment, most favorable to sustaining the verdict and judgment.'"

Id., quoting Seasons Coal Co., Inc. v. Cleveland, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984),

fn.3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶ 55} Additionally, we explained in State v. Murphy, 4th Dist. No. 07CA2953,

2008–Ohio–1744, ¶31:

> "It is the trier of fact's role to determine what evidence is the most credible and
> convincing.   The fact finder is charged with the duty of choosing between two
> competing versions of events, both of which are plausible and have some factual
> support.   Our role is simply to insure the decision is based upon reason and fact.
> We do not second guess a decision that has some basis in these two factors, even
> if we might see matters differently."

{¶ 56} In the case at bar, some evidence shows that the trial court based its fraud finding

upon reason and fact.

> "Fraud has various elements: (1) a representation (or concealment of a fact
> when there is a duty to disclose) (2) that is material to the transaction at hand, (3)
> made falsely, with knowledge of its falsity or with such utter disregard and
> recklessness as to whether it is true or false that knowledge may be inferred, and
> (4) with intent to mislead another into relying upon it, (5) justifiable reliance, and
> (6) resulting injury proximately caused by the reliance.   Burr v. Stark Cty. Bd. of
> Commrs. (1986), 23 Ohio St.3d 69, 73, 23 OBR 200, 491 N.E.2d 1101."

Volbers-Klarich v. Middletown Mgt., Inc., 125 Ohio St.3d 494, 2010-Ohio-2057, 929 N.E.2d 434, ¶27.   Appellant contends that the record contains no factual support that he recorded an invalid deed (1) with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, or (2) with the intent of misleading another into relying upon it.   We do not agree.   Our review of the record reveals that some evidence exists that appellant either knew, or should have known, that the deed was invalid.   Appellant claimed that he was in the room when Darwin signed the deed.   However, all of appellee's witnesses testified that Darwin was incapable of writing his name.   The hospice care workers testified that Darwin was totally dependent on others for care and that he could not even hold an eating utensil or the television remote control in his hand.   Obviously, this testimony directly contradicts appellant's claim that Darwin signed the deed and the trial court rejected appellant's assertion that Darwin signed the deed.   Furthermore, the person who notarized the deed admitted that she did not witness Darwin sign the deed, but, instead, appellant presented it to her already signed.   Thus, the trial court logically could have concluded that appellant did not testify truthfully when he stated that Darwin signed the deed.   Thus, appellant knew, or should have known, that the deed did not contain Darwin's true signature.

{¶ 57} Additionally, the evidence shows that appellant recorded the deed.   Obviously, he intended to lead the recorder's office to believe that the deed was valid and that he owned the property.   This evidence could have allowed the trial court to conclude that appellant intended to mislead the recorder's office into accepting the deed as valid, thus giving him sole ownership of the property.   Consequently, the record does in fact contain some evidence to support the two

fraud elements that appellant challenges.   We must presume the regularity of the trial court's

proceedings and affirm its judgment.

{¶ 58} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's

third assignment of error.

IV

{¶ 59} In his fourth assignment of error, appellant contends that the trial court improperly

ordered appellant to pay attorney fees.   Appellant asserts that the court could not award attorney

fees unless it awarded punitive damages, or found that appellant acted with malicious intent.

{¶ 60} Initially, we again observe that appellant did not file a Civ.R. 52 request for

factual findings and legal conclusions.   Thus, our review is limited.   We will presume the

regularity of the trial court's decision and affirm if some evidence supports its attorney fee

award.

{¶ 61} Ordinarily, a party who prevails in a civil action may not recover attorney fees.

Wilborn v. Bank One Corp., 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶7, citing

Nottingdale Homeowners' Assn., Inc. v. Darby, 33 Ohio St.3d 32, 33–34, 514 N.E.2d 702

(1987); State ex rel. Beebe v. Cowley, 116 Ohio St. 377, 382, 156 N.E. 214 (1927).   Exceptions

to this general rule exist, however.   "Attorney fees may be awarded when a statute or an

enforceable contract specifically provides for the losing party to pay the prevailing party's

attorney fees."   Id., citing Nottingdale, 33 Ohio St.3d at 34.   Additionally, a court may award

attorney fees "when the prevailing party demonstrates bad faith on the part of the unsuccessful

litigant."   Id., citing Pegan v. Crawmer, 79 Ohio St.3d 155, 156, 679 N.E.2d 1129 (1997);

accord <u>Schiavoni v. Roy</u>, 9th Dist. Medina No. 11CA0108-M, 2012-Ohio-4435; <u>Fancher v. Lawrence</u>, 4th Dist. Lawrence No. 1962 (Mar. 6, 1992).

{¶ 62} In the case at bar, appellant asserts that none of the exceptions apply. We believe that the trial court rationally could have determined that appellee demonstrated that appellant acted in bad faith.

{¶ 63} "Bad faith" embraces more than bad judgment or negligence. <u>State v. Powell</u>, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶81. Instead, ""'[i]t imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.""" <u>Id.</u>, quoting <u>Hoskins v. Aetna Life Ins. Co.</u>, 6 Ohio St.3d 272, 276, 452 N.E.2d 1315 (1983), quoting <u>Slater v. Motorists Mutual Ins. Co.</u>, 174 Ohio St. 148, 187 N.E.2d 45 (1962), paragraph two of the syllabus; accord <u>Casserlie v. Shell Oil Co.</u>, 121 Ohio St.3d 55, 2009-Ohio-3, 902 N.E.2d 1, ¶32.

{¶ 64} In the case at bar, even though the trial court did not enter a specific finding of bad faith, in the absence of a Civ.R. 52 request for factual findings and legal conclusions, it was not required to do so. Instead, we may uphold its judgment to award attorney fees as long as some evidence supports a finding that appellant acted in bad faith.

{¶ 65} Here, some evidence certainly shows that appellant acted in bad faith in his attempt to gain ownership of the property. Appellant presented a deed to a notary that contained a signature that purported to be Darwin's. Some evidence shows, however, that Darwin could not have signed the deed. Thus, some evidence shows that appellant's claim that Darwin signed the deed is patently false. Appellant's motivation in attempting to record a deed with a forged

signature would be to obtain title to the property by deception.   His purpose was dishonest.   It was more than bad judgment or negligence.   Instead, some evidence shows that appellant was consciously aware of his wrongdoing.   Thus, the foregoing facts constitute some evidence to support the trial court's attorney fee award.   We therefore disagree with appellant that the trial court erred by awarding appellee attorney fees.

{¶ 66} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's fourth assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

[Cite as *Fultz v. Fultz*, 2014-Ohio-3344.]

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, J.: Concurs in Judgment & Opinion
McFarland, J.: Dissents

For the Court

BY:_____
Peter B. Abele
Presiding Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.