[Cite as *Ark Advanced Remediation, L.L.C. v. Watson*, 2024-Ohio-2874.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

| | | |
|---|---|---|
| Ark Advanced Remediation, LLC, | : | Case No. 22CA15 |
| Plaintiff-Appellee, | : | |
| v. | : | |
| Roger A. Watson, et al., | : | DECISION AND JUDGMENT ENTRY |
| Defendants-Third-Party Plaintiffs-Appellants, | : | |
| | : | **RELEASED 7/24/2024** |
| v. | : | |
| | : | |
| Auto-Owners (Mutual) Insurance Company, | : | |
| Third-Party Defendant-Appellee. | : | |

APPEARANCES:

William L. Archer, Jr., Circleville, Ohio for defendants-third-party plaintiffs-appellants.

William S. Cole and Evan T. Cole, Cole & Kirby, Jackson, Ohio for plaintiff-appellee.

Brian Winchester and Taylor K. Dennen, McNeil, Schick, Archibald & Biro, Cleveland, Ohio for third-party defendant-appellee.

Hess, J.

{¶1} Defendants-third-party plaintiffs-appellants Roger A. Watson and Cindy Hager ("Homeowners") appeal the trial court's judgment in favor of plaintiff-appellee Ark Advanced Remediation, LLC ("Ark") and third-party defendant-appellee Auto-Owners (Mutual) Insurance Company ("Auto-Owners") granting directed verdicts in favor of Ark and Auto-Owners on claims related to mold remediation performed by Ark for

Homeowners and covered by the insurance policy issued by Auto-Owners. Homeowners also appeal the trial court's judgment granting their trial counsel's request to withdraw and denying their request for an extension of the trial date.

{¶2} Homeowners contend that the trial court abused its discretion when it permitted their counsel to withdraw without assuring that they would not be prejudiced because of counsel's withdrawal. They argue that the trial court should have investigated the basis for their attorney's request to withdraw to look for potential abuses when an attorney leaves a difficult case nearing trial. Homeowners also contend that the trial court abused its discretion when it denied their motion for a continuance of the trial. They allege that they tried to secure substitute counsel but were unable to during the seven months prior to the trial and a continuance should have been granted to permit them to continue to search. They also allege that the case had been delayed for so long at that point that an additional indefinite delay would not have inconvenienced the other parties. Finally, Homeowners contend the trial court erred as a matter of law when it granted Ark a directed verdict because the question of the existence of an oral contract was a factual question for the jury. As a result, they ask that the judgment be reversed, and a new trial ordered.

{¶3} For the reasons that follow, we find that the trial court did not abuse its discretion in granting the Homeowners' attorney's motion to withdraw or in denying the Homeowners' motion for a continuance of the trial. And, the trial court did not err in granting Ark a directed verdict. We overrule Homeowners' assignments of error and affirm the judgment of the trial court.

## I.    FACTS AND PROCEDURAL HISTORY

{¶4}    In January 2018, Ark filed a complaint against Homeowners in which it alleged that beginning in July 2017, it had performed mold remediation work for the Homeowners for which the Homeowners had not paid. Ark sought a judgment against Homeowners in the sum of $61,340.41. Homeowners filed an answer and counterclaim against Ark in which they alleged that Ark performed the work in a negligent and unworkmanlike manner, causing Homeowners to expend substantial sums to have the work completed in a proper manner. Homeowners also filed a third-party complaint against Auto-Owners asserting an indemnification claim alleging that Auto-Owners is obligated to pay the Homeowners' claims for any judgment Ark obtains against the Homeowners.

{¶5}    Auto-Owners answered and filed a counterclaim for a declaratory judgment against Ark and Homeowners to determine the parties' rights under the insurance policy. Auto-Owners alleged that Homeowners had made a claim for water damage and mold caused by a water leak in the refrigerator water line that damaged the kitchen, hallway, and laundry room areas. Auto-Owners alleged that in response to the claim, it issued three payments to Homeowners: (1) a $35,529.13 payment under the dwelling coverage of the policy; (2) a $46,470.00 payment under the fungi/mold coverage of the policy; and (3) a $14,694.23 payment under the additional living expense coverage of the policy, for a total sum of $96,693.36. Auto-Owners sought a declaration that these payments fulfilled its obligations to Homeowners under the policy, and that it was not required to defend or indemnify Homeowners against the claims brought by Ark.

{¶6}   In March 2019, the trial court issued a case scheduling order and established a motion/discovery deadline of June 2019 and a jury trial for November 19, 2019. Auto-Owners filed a timely motion for summary judgment and, at the same time, the Homeowners filed a motion to amend their third-party complaint against Auto-Owners. The court granted Homeowners' motion and Homeowners filed an amended third-party complaint against Auto-Owners in June 2019 that added breach of contract and bad faith claims against Auto-Owners. Auto-Owners answered the amended third-party complaint and added a supplement to its motion for summary judgment.

{¶7}   In anticipation of the November 19, 2019 trial, Auto-Owners filed a motion to bifurcate the bad faith claim, a motion in limine concerning expert testimony, a set of proposed jury instructions, jury interrogatories, and verdict forms, as well as its trial brief, witness list, and exhibit list. Auto-Owners also filed a motion in limine to introduce the testimony of an attorney, Brian Garvine, who had been retained by Homeowners before Ark sued them. According to Auto-Owners, the Homeowners had retained Garvine in October 2017 to help them resolve the mold remediation work, which began in July 2017. Garvine had contacted Auto-Owners and demanded additional payment to resolve the claim. Auto-Owners contended that it had reached a settlement with the Homeowners through Garvine's efforts whereby Auto-Owners paid Homeowners an additional sum of $32,925.33, which exhausted the mold remediation policy limits. This final payment was issued on December 18, 2017 as a full and final settlement as to any and all disputes of the Homeowners' claim. A month later, in January 2018, Ark sued Homeowners. The trial court granted the motion to bifurcate the bad faith claim and granted the motion to permit the testimony of Brian Garvine.

{¶8}   By agreement of the parties, the November 19, 2019 trial was continued until March 16, 2020.

{¶9}   Shortly after the trial was continued, the trial court issued a decision on Auto-Owners' motion for summary judgment. The trial court determined that genuine issues of material fact existed concerning: (1) whether Auto-Owners had negotiated a settlement with Homeowners; (2) whether additional monies were owed Homeowners under the policy; and (3) whether Auto-Owners violated its duty to act in good faith. However, it found it undisputed that Homeowners, not Auto-Owners, hired Ark to provide mold remediation and repair work:

> The Court finds that there is no genuine issue of material facts that Ark was working for Watson [Homeowners], and not Auto-Owners as is the normal custom for work which is being performed pursuant to an insurance claim. The contractor works at the direction of the insured. The insurance company pays the contractor and/or the insured under the terms of the policy.

*        *        *

> The Court finds that Auto-Owners is entitled to judgment as a matter of law. There is no genuine issue of material fact that Auto-Owners did not hire Ark.

{¶10}  Homeowners requested a continuation of the March 16, 2020 trial because their attorney was previously committed to a criminal trial commencing on that same date. The trial court granted a continuation and set a new trial date for June 22, 2020. However, in June 2020, several weeks before the trial date, Ark notified the court that the parties were engaged in mediation. A month later, the mediator reported that attempts to mediate were unsuccessful and Ark asked the trial court to set a final trial date. The trial court set a final pretrial for February 10, 2021 and trial for March 2, 2021. However, in January 2021, Homeowners requested a continuance of the final pretrial and trial dates for two reasons: (1) their expert witness died and they needed additional time to locate a new

expert and (2) Homeowner Roger A. Watson had major emergency surgery which hospitalized him for three weeks and made him highly susceptible to COVID-19. A new trial date was set for August 9, 2021. After a new judge was appointed to the case, the trial court vacated the August trial date and set a new trial date of January 25, 2022. In December 2021, for unspecified reasons the parties agreed to continue the January 25, 2022 trial date to April 19, 2022.

{¶11} On February 11, 2022, Homeowners' attorney filed an application to withdraw as counsel. Their attorney explained that his application was made:

> pursuant to Rules of Prof. Cond. 1.16(b)(1), (5), and (6). The Defendants/Third-Party Plaintiffs have been given reasonable warning of the Applicants intent to withdraw as counsel in this manner. Moreover, permitting Applicant to withdraw can be accomplished without material adverse effect on the interests of the Defendants/Third-Party Plaintiffs, and by this application counsel is requesting ample time from the Court for Defendants/Third-Party Plaintiffs to employ other counsel.
>
> The trial of this case is currently scheduled to begin on April 19, 2022. This case involves extensive discovery, multiple parties and multiple claims thus making it somewhat complex in nature. As such, counsel is requesting sufficient time for the Defendants/Third-Party Plaintiffs to search for and employ new counsel, and for time for newly hired counsel to prepare the case.

The trial court granted Homeowners' counsel's application to withdraw and stated that Homeowners "shall be given a reasonable time to employ new counsel."

{¶12} A telephonic status conference was set for April 8, 2022, but Homeowners did not attend. Court staff was directed to reach out to Homeowners to determine their intentions. Three days later, Homeowners filed a pro se motion for a continuance of the April 19, 2022 trial date. They explained that they did not attend the status conference because notice of it did not arrive in their mailbox until the evening after the status conference. They also stated, "We have no counsel or attorney and need a court-

appointed one to help us with this matter." The trial court granted the motion, gave an indefinite continuation of the trial date, and advised Homeowners, "this is a civil case and thus the Court cannot appoint counsel for them. They must employ their own attorney."

**{¶13}** Three months passed and, in June 2022, the trial court set a pretrial for July 19, 2022. At the July pretrial, Homeowners informed the court that they had been unable to retain counsel despite having five months to do so and asked for additional time to obtain counsel. The trial court denied their request and set a trial date for September 20, 2022. On September 1, 2022, Homeowners filed a motion for a continuance of the trial date in which they explained that they have been unable to find a new attorney, despite looking in six different counties and consulting the Columbus Bar Association. The trial court denied the request and the trial went forward on September 20, 2022, with Homeowners participating pro se.

**{¶14}** At trial, Ark presented the testimony of Homeowner Cindy Hager and Phillip Osbourne, the operations manager for Ark, who provided evidence of the extent of the water and mold damage, the type of work performed, and the payments made by Auto-Owners, some of which were paid directly to Ark and others which were made directly to Homeowners. An unpaid balance to Ark of $61,340.41 remained. The Homeowner presented the testimony of their independent insurance agent, John Saunders, who testified about the Homeowners' claim, the steps Saunders took upon learning of the claim, Saunders' interactions with insurance adjusters, Saunders' understanding of the extent of the damage, and the sum of money Auto-Owners paid on the claim. The Homeowners each testified about the water damage and repairs that were performed on their home. They testified that they were dissatisfied with the work that Ark performed and

had to retain other contractors to fix things such as the plumbing in the sink and faulty wiring for the stove and hot water tank.

{¶15} At the close of the Homeowners' case, Auto-Owners moved for a directed verdict. The trial court granted a directed verdict on the punitive damages claim for bad faith because Homeowners failed to present any evidence of malice.

{¶16} In rebuttal, Ark recalled Phillip Osbourne, the operations manager for Ark, to the stand, who explained that the plumbing problems in the sink the Homeowners believed were caused by Ark's improper installation, were caused by the materials purchased by the Homeowners and installed by Ark at the Homeowners' direction. Osbourne also testified that the trim and flooring was also selected and paid for by the Homeowners. In the middle of Ark's rebuttal case, the trial was temporarily suspended due to an emergency medical issue with Homeowner Roger Watson.

{¶17} When the trial resumed on October 6, 2022, Auto-Owners renewed a motion for a directed verdict on the remaining claims, which the trial court granted and dismissed all Homeowners' claims against Auto-Owners. Additionally, Ark moved for a directed verdict on the Homeowners' counterclaim on the grounds that Homeowners failed to provide expert testimony to support their claims that the mold remediation work was performed in a negligent and unworkmanlike manner. And, Homeowners failed to submit sufficient proof of any damages they alleged they suffered as a result. The trial court granted Ark's motion for a directed verdict on Homeowners' counterclaim and granted Ark a directed verdict on its complaint against the Homeowners and awarded Ark $61,340.41, plus pre- and post-judgment interest from the date of the filing at the statutory rate. Homeowners' counterclaims were dismissed and costs were assessed against

them. Upon Ark's motion, the trial court also awarded $2,575.48 as costs and fees incurred.

**{¶18}** Homeowners appealed.

## II. ASSIGNMENTS OF ERROR

**{¶19}** Homeowners identified three assignments of error for review:

1. The trial court abused its discretion when it permitted Appellants' counsel to withdraw without assuring that a client shall not be prejudiced as a result of the withdrawal of counsel.

2. The trial court abused its discretion in denying Appellants' motion for continuance of the trial.

3. The trial court erred as a matter of law when it directed a verdict for Plaintiff on its complaint when there existed a factual dispute that [s]hould have been submitted to the jury.

## III. LEGAL ANALYSIS

### A. Counsel's Application to Withdraw

**{¶20}** For their first assignment of error, Homeowners contend that the trial court abused its discretion when it permitted their attorney to withdraw as counsel without ensuring that his withdrawal would not prejudice them.

### 1.Standard of Review

**{¶21}** We review a trial court's decision on a motion to withdraw as counsel under the abuse of discretion standard. *State v. Miller*, 2001-Ohio-2635, * 3 (4th Dist.). "Accordingly, we will not reverse the decision of the trial court unless it is arbitrary, unreasonable, or unconscionable." *Id.*

### 2. Legal Analysis

**{¶22}** Homeowners' counsel filed his motion to withdraw on February 11, 2022. In his motion, counsel explained that he had given the Homeowners a reasonable warning

that he intended to withdraw and that he could withdraw without material adverse effects on the Homeowners. He asked the trial court to give Homeowners ample time to employ other counsel. After granting the motion, the trial court granted an indefinite continuation of the trial date to allow Homeowners time to find substitute counsel. However, after having approximately five months to find substitute counsel, Homeowners appeared at a July 2022 pretrial hearing and informed the court that they had not found substitute counsel and wanted to have an indefinite continuation of the trial date. The trial court denied their request and set the trial date for September 20, 2022. In total, the Homeowners were aware of their attorney's desire to withdraw in early February and had over seven months before trial to retain a substitute counsel.

{¶23} Homeowners contend that the trial court "violated its mandate to protect Appellants from prejudice by investigating into the basis for Mr. Findley's application." However, the application states that the grounds are Rule 1.16 (b) (1), (5) and (6) which provide:

> (1) withdrawal can be accomplished without material adverse effect on the interests of the client;
> *           *                *
> (5) the client fails substantially to fulfill an obligation, financial or otherwise, to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;
>
> (6) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; * * *.

At no time during the proceedings did the Homeowners dispute, oppose, or otherwise raise any objection to their attorney's motion to withdraw. The trial court took reasonable steps to protect the Homeowners by giving them five months to find substitute counsel. Even after giving them five months to retain new counsel, the trial court granted them an

additional two months before the trial date, for a total of seven months to locate substitute counsel.

**{¶24}** Homeowners' legal authority in support of their argument is readily distinguishable. In *Bennett v. Bennett,* 86 Ohio App.3d, 343 (8th Dist. 1993) the trial court permitted counsel to withdraw minutes before a show cause hearing and required the appellant to proceed with the hearing without representation. In *Williams v. Williams, infra,* the appellate court found that the trial court had abused its discretion when the appellant had not appeared for the trial and his attorney was permitted to withdraw and the trial proceeded in the party's absence:

> [T]he domestic relations court allowed appellant's attorney to withdraw from his representation of appellant without the filing of a written motion, without ascertaining whether the attorney provided his client with notice of his desire to withdraw and without determining whether the attorney complied with DR 2-110(A) so that his client would not be prejudiced. Moreover, there is no evidence showing that upon allowing counsel to withdraw at the beginning of trial, the court provided appellant with notice of the withdrawal and permitted appellant an opportunity to obtain substitute counsel before proceeding to trial.

*Williams v. Williams*, 2000 WL 678825, *3 (6th Dist. May 26, 2000).

**{¶25}** This is not a case where counsel suddenly moved to withdraw on the eve of a trial or hearing without any prior notice to the client. The attorney informed the Homeowners of his intent to withdraw, and the trial court protected the Homeowners from prejudice by giving them a total of seven months – more than adequate time – to retain substitute counsel. *Sycamore Twp. v. Carr,* 2022-Ohio-1337, ¶ 14 (1st Dist.) (trial court did not abuse its discretion in allowing attorney to withdraw where client was given over two months to locate substitute counsel). Accordingly, the trial court did not abuse its discretion by granting Homeowners' attorney's motion to withdraw.

**{¶26}** We overrule Homeowners' first assignment of error.

## B. Denial of Continuation of Trial

**{¶27}** Homeowners contend that the trial court abused its discretion in denying their motion to continue the trial. They argue that the analysis of this assignment of error is tied to the application to withdraw, the complexity of the case, and the fact that the case had already been pending for over four years when they sought the indefinite continuation.

## 1. Standard of Review

**{¶28}** The decision regarding a motion to continue is left to the "broad, sound discretion" of the trial court. *State v. Unger*, 67 Ohio St.2d 65, (1981), syllabus; *Snyder v. Waldron*, 2013–Ohio–3416, ¶ 41 (4th Dist.); *State v. Dickess,* 2009–Ohio–4541, ¶ 9 (4th Dist.). Consequently, absent an abuse of discretion, a reviewing court will not disturb a trial court's decision. *Fultz v. Fultz,* 2014-Ohio-3344, ¶ 17-18 (4th Dist.).

## 2. Legal Analysis

**{¶29}** The Supreme Court of Ohio has adopted a balancing approach that recognizes "all the competing considerations" to determine whether a trial court's denial of a motion to continue constitutes an abuse of discretion. *Unger*, 67 Ohio St.2d at 67. In exercising its discretion, a trial court should consider any potential prejudice to the party against the court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice. *Id.* A court should also consider: (1) the length of the delay requested; (2) whether other continuances have been requested and received; (3) the inconvenience to litigants, witnesses, opposing counsel and the court; (4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived;

(5) whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and (6) other relevant factors, depending on the unique circumstances of the case. *Id.; State v. Conway*, 2006–Ohio–791, ¶ 147; *Fultz* at ¶ 19, fn. 1.

**{¶30}** Here, this case had already experienced a total of seven trial continuances and had been pending for over four years. Of the seven trial continuances, three were requested solely by the Homeowners. In July 2022, the Homeowners, although given five months to find new counsel, still had not found new counsel and sought an indefinite period to do so. At this point, additional continuances would have inconvenienced the parties and witnesses. According to statements made throughout the record, at least three witnesses had died while the case was pending. Based upon Homeowners' attorney's motion to withdraw, the Homeowners were at fault for their counsel's decision to withdraw because he informed the trial court that they did not fulfill an obligation to him regarding his services and they were given a reasonable warning that he would withdraw unless the obligation was fulfilled, citing R.Prof. Cond. 1.16(b)(5) and (6). And, although Homeowners contend that the case was "complex" because it involved multiple parties and claims, they fail to identify any period, beyond the seven months already provided, that they believe would be sufficient time for them to find an attorney to represent them.

**{¶31}** Courts have routinely found that two months is a reasonably sufficient time to prepare for a typical civil trial. *Fultz* at ¶ 28 (two and one-half months was sufficient time to prepare for a civil trial). This length of time has even been deemed sufficient preparation in capital cases. *State v. Bryan,* 2004–Ohio–971, ¶ 64, citing *State v. Beuke*, 38 Ohio St.3d 29, 37 (1988) (two and one-half months' trial preparation for capital punishment case); *State v. Benner,* 40 Ohio St .3d 301, 303 (1988) (two and one-half

months' trial preparation). Thus, the trial court's indefinite continuation of the trial date in April 2022 and its subsequent scheduling in July 2022 of a trial date two more months out on September 20, 2022, gave any counsel Homeowners could have retained a reasonably sufficient time to prepare for this moderately complex civil trial.

**{¶32}** Homeowners cite *Hoening v. Frick,* 2010-Ohio-1788 (2nd Dist.) to support their contention that they had a compelling legitimate reason for their continuance. However, the facts of *Hoening* differ significantly. In *Hoening*, the case had been pending less than one year at the time of trial, Hoening's attorney had withdrawn approximately six weeks before trial, Hoening's request for a trial continuance had been the first request by either party in the case, the counterclaim against her had only been filed two months before the trial date, Hoening asked for a continuance about two weeks after her attorney withdrew and about four weeks before trial, and Hoening asked for a continuance so she could have more than two weeks to locate new counsel. Hoening explained to the trial court that, because of health concerns and a recent trip to an emergency room, she needed more than two weeks to locate new counsel. The trial court denied her request. As a result, she moved to dismiss her complaint without prejudice, and it was granted. However, the trial court proceeded with the trial of the counterclaim against her and she was required to represent herself, which resulted in a $15,296.21 judgment against her. Hoening was an 80-year-old woman. The appellate court in *Hoening* found that the *Unger* factors weighed in favor of granting a continuance and the trial court had abused its discretion in denying it.

**{¶33}** Here, Homeowners' case was pending for over four and a half years, there had been seven prior trial continuances (three by the Homeowners), at least three

witnesses, including one expert witness, had died during its pendency, and the Homeowners had approximately five months to locate new counsel before they requested a continuance. Based on our review of the record, we find that the factors in *Unger* weighed heavily against granting Homeowners' motion for a continuance of the trial date. We find that the trial court did not abuse its discretion in denying Homeowners' fourth request for a continuation of the trial date.

**{¶34}** We overrule Homeowners' second assignment of error.

## C. Directed Verdict on the Oral Contract

**{¶35}** Homeowners contend that the trial court erred as a matter of law when it granted a directed verdict for Ark on its complaint against the Homeowners because there was a factual issue of whether Ark and Homeowners had an oral contract that should have been submitted to the jury.

### 1. Standard of Review

**{¶36}** When determining whether to grant a motion for directed verdict, the trial court must submit an essential issue to the jury if there exists sufficient credible evidence to permit reasonable minds to reach different conclusions on that issue. *Mender v. Chauncey,* 2015-Ohio-4105, ¶ 9 (4th Dist.). We review the trial court's decision to grant or deny a motion for a directed verdict de novo because it presents a question of law. *Id.* at ¶ 10.

### 2. Legal Analysis

**{¶37}** Ark's complaint against the Homeowners was a simple breach of contract claim in which Ark alleged that Homeowners hired Ark to perform mold remediation services and relocate a water line at the Homeowners request, that Ark had performed

the work, but that the Homeowners had failed to pay Ark and Ark was owed $61,340.41. Auto-Owners also contended that the Homeowners had hired Ark. It was undisputed that Ark did not obtain a signed written contract for the work; the work was performed by verbal agreement.

**{¶38}** Several years before the trial, Auto-Owners moved for summary judgment on the Homeowners' third-party claims and was granted a partial summary judgment. As part of that judgment, the trial court reviewed the evidence submitted by the parties on whether Homeowners or Auto-Owners had hired Ark to perform the mold remediation work. Based on its review of the deposition and affidavit testimony of Ark, Homeowners, and Auto-Owners, the trial court determined that there was no genuine issue of material fact that Ark was hired by the Homeowners, not by Auto-Owners, which was customary for work being performed under an insurance claim. Therefore, prior to trial, it had been determined that the Homeowners had hired Ark. The Homeowners and Ark had agreed to have Ark perform mold remediation services. "A contract is an agreement, upon sufficient consideration, between two or more persons to do or not to do a particular thing." *Lawler v. Burt*, 7 Ohio St. 340, 350, (1857); *Kostelnik v. Helper*, 2002-Ohio-2985, ¶ 15 ("Terms of an oral contract may be determined from 'words, deeds, acts, and silence of the parties.' ")

**{¶39}** The trial court's directed verdict granted the following: "Plaintiff is awarded Judgment on his [sic] Complaint in the amount of * * * $61,340.41 plus prejudgment interest from the date of the filing at the statutory rate. * * * Defendants' Counterclaims are hereby dismissed." Ark's complaint was for a breach of contract, which required it to prove four elements: (1) the existence of a contract, (2) performance by the plaintiff, (3)

a breach by the defendant, and (4) damage or loss to the plaintiff. *Alexander Local School Dist. Bd. of Education v. Village of Albany,* 2017-Ohio-8704, ¶ 28 (4th Dist.). The trial court had determined prior to trial that Homeowners – not Auto-Owners – had hired Ark to perform the work. Therefore, the first element of a breach of contract claim was established and was not an essential issue for the jury to decide.

**{¶40}** Homeowners have not appealed the trial court's December 4, 2019 partial grant of summary judgment against them, so that decision is not properly before us for review. Therefore, the question of whether there was an oral contract between the Homeowners and Ark was, as a matter of law, not a question to be decided by the jury; it was an element of Ark's claim that had been previously decided by the trial court. The Homeowners do not raise any issues with the remaining three elements of Ark's breach of contract claim (i.e., performance by Ark, failure to pay by Homeowners, or the amount of Ark's damages), therefore we need not review them. The trial court did not err when it granted a directed verdict in favor of Ark on its claim against the Homeowners.

**{¶41}** We overrule Homeowners' third assignment of error.

IV. CONCLUSION

**{¶42}** We overrule appellants' assignments of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellants shall pay costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallia County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court



BY: _____
       Michael D. Hess, Judge




## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**